## STRICKLAND BROTHERS *v.* STILES *et al.*

1. When a landlord enters into a written contract with his tenant for the purpose of creating a lien upon the crops of the latter for supplies furnished and to be furnished the tenant by the landlord to make the crops, the term "supplies" will include money furnished by the landlord and used by the tenant in making and gathering the crops.

2. A contract creating such lien is sufficiently descriptive of the property upon which it is to take effect, when it specifies the entire crops of the tenant, consisting of a certain number of acres of cotton to be grown during the year for which the supplies are furnished, and when it also appears that the land mentioned in the contract was all that the tenant had in cultivation, and that cotton was the only crop grown on the same.

3. The relation of landlord and tenant may exist between two parties although the landlord is not really the owner of the premises rented but is himself a renter from the owner; and the lien of such landlord for rent and supplies is superior to that of a general judgment against the tenant, older in date than the landlord's lien.

4. While a special lien for rent arises in favor of the transferee of a rent contract when the crop matures, if the transfer was made in writing before such maturity, yet where the landlord has indorsed a rent note transferred by him and has thus become personally liable for its payment, and where an understanding or agreement exists between him and the transferee that the right of foreclosing the lien shall remain in the landlord for his protection, and it is accordingly foreclosed by him, in a contest between such landlord and a judgment creditor of the tenant over a fund on which the lien for rent takes effect, in which contest the transferee of the rent note and the tenant are likewise parties and both of them consent to a

foreclosure of the lien in the name of the landlord, it is not error for the court to treat the lien for rent as properly foreclosed, over the objection of the judgment creditor.

5. The above principles are controlling of all the material questions of law involved in the record and important to be considered. There being sufficient evidence to sustain the verdict, this court will not interfere with the discretion of the trial judge in overruling the motion for a new trial.

Argued March 23,— Decided April 21, 1899.

Money rule. Before Judge Harris. City court of Cartersville. January 22, 1898.

*Paul F. Akin*, for plaintiffs in error.
*Neel & Neel* and *John H. Wikle*, contra.

LEWIS, J. Strickland Brothers obtained a general judgment against Howren, upon which execution issued and was levied, among other property, upon certain crops of the defendant on land cultivated by him. Stiles foreclosed a landlord's lien for rent against Howren; and Stover as assignee foreclosed a landlord's lien for supplies. Executions issued on both of these foreclosures were likewise levied upon the same crops, made during the year in which the liens were created. The property was sold by the sheriff under these levies. He had also in his hands a general judgment in favor of Akin against the same defendant. Strickland Brothers ruled the sheriff, in the city court of Cartersville, for enough of the proceeds of the sale to satisfy their judgment. The sheriff answered that he had in his hands as proceeds of the crop the sum of $554.30. Stiles claimed rent to the amount of $326, and Stover claimed a lien for supplies to the amount of $421.69. The jury returned a verdict in favor of the claims of Stover and Stiles; whereupon Strickland Brothers moved for a new trial, and assign error on the judgment of the court overruling the motion.

1. On January 8, 1897, Howren gave to Stiles as his landlord a written lien, the consideration therein expressed being "six hundred dollars for value received for supply furnished and to be furnished to me by said landlord or assign to make my crops the present year." This lien was transferred by Stiles to Stover. Among the items furnished by Stover to the tenant, appearing in his account for supplies, was money. It

was contended by counsel for plaintiffs in error that there could be no recovery for such items, as the written lien foreclosed was for supplies, and that term does not include money. It is insisted that the contract should be strictly construed; and numerous decisions of this court are cited, giving strict construction to laws creating such special liens. We do not see, however, that in construing words used in contracts between parties touching these liens, any different rule should apply from what would prevail in cases of contracts generally. Section 3673 of the Civil Code declares that the cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it should be enforced irrespective of all technical or arbitrary rules of construction. Section 3675 (2) declares: "Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business, will be construed, generally, to be used in reference to this particular meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties." We are not aware that the word "supplies" has any technical signification; but even if it has, it should be given the meaning intended by the parties, which meaning may be inferred from the general acceptation of the term. It is quite comprehensive in its significance, and, in the definition given by standard dictionaries, is certainly broad enough to answer the objection of plaintiff's counsel in this case: "Supply. That which is or can be supplied; available aggregate of things needed or demanded. An amount sufficient for a given use or purpose." No doubt in its general acceptation when applied to supplies furnished a tenant on land used for farming purposes, it comprehends almost anything necessary for the tenant in order to enable him to make the crop. Such was the effect of the testimony of various witnesses on this subject, whose evidence was admitted doubtless under the provisions of the section of the code last cited. Unquestionably the word would include provisions, farming implements, etc., necessary for the tenant's use. What would be the difference

between supplying the tenant with such things and furnishing him with money to buy them?   Giving the word such a construction would not contravene any rule of law, for the statute expressly provides that money furnished a tenant is one thing for which the landlord may have a lien.   Civil Code, § 2800. It is contended, however, by counsel for plaintiffs in error, that inasmuch as that section uses the words "supplies and money," it was thereby implied that the former word did not include the latter.   The act of 1873 gave a lien for supplies, money, farming utensils, and also provisions.   The present code uses the words, "supplies, money, horses, mules, asses, oxen, farming utensils of necessity."   The word "provisions" is left out. Yet no one will pretend that it is not included in the word "supplies," and all the other words used in the act may likewise with equal propriety be included in this general term. The parties are presumed to contract with reference to the particular law bearing upon the subject-matter of their agreement; and when we speak of a landlord's lien for supplies, the mind naturally contemplates especially such things as are enumerated by the statute upon the subject of supplying a tenant.

2. It is further insisted that the contract creating this lien for supplies was not sufficiently descriptive of the property upon which it was to take effect, and was therefore void.   The description in the contract is, "consisting of 83½ acres of cotton to be grown the present year, as provided for by act of General Assembly of Georgia," etc.   It appears that the tenant, Howren, had no other land in cultivation that year.   This was in cotton, and that was the identical cotton levied on and sold. We think the language used was amply sufficient to identify the property upon which the lien was to take effect.

3. The fact is developed by the testimony that the land upon which this crop was made was not owned by Stiles, but by his mother, and that Stiles rented the land from her and sublet the same to this tenant, Howren.   It is insisted that the relation of landlord and tenant did not, therefore, exist between Stiles and Howren.   It does not follow that it is necessary for one of the parties to own the land, in order for this relation to exist.   In *Morgan* v. *Morgan*, 65 *Ga.* 493, it was held that "One renting

land from another becomes his tenant although he may not own the land, and the relation of landlord and tenant exists, with liability to pay the landlord or his representative the amount due for rent." See *Spence* v. *Wilson*, 102 *Ga.* 762.

4. It seems that a rent note for at least a portion of this rent was taken by Stiles from Howren, made payable to Stiles or bearer; that it was indorsed by Stiles and transferred by him as collateral security to Stover. It is insisted that by the transfer of this note to Stover the lien went with it; and that therefore foreclosure was improperly had in the name of Stiles, instead of Stover as transferee. In section 2798 of the Civil Code it is provided, that whenever any contract for rent is evidenced by writing and is transferred by written assignment before the maturity of the crops on the lands rented, the special lien in favor of landlords shall, on the maturity of the crops, arise in favor of the transferee of such rent contract in the same manner as it would have done in favor of the landlord had no transfer been made. When the written transfer contemplated by this statute is made of a written contract for rent, we do not question the right of the transferee to foreclose the lien in his own name. *Bolton* v. *Duncan*, 61 *Ga.* 103. The case of *Rawls* v. *Moye*, 98 *Ga.* 564, cited by counsel for plaintiffs in error, is not in point; as that case dealt with a paper which was a rent-note and also a written lien for supplies. The transfer was only of the *rent* note ; and it was held this did not authorize the transferee to foreclose for advancements. But it appears in this case that an understanding was had between the landlord and the transferee, that the landlord should reserve his lien for the purpose of protecting himself as indorser upon the rent note. Besides this, the landlord and transferee were both parties to this action, acquiesced in the proceedings of foreclosure that were had, and no possible injury could result to any one in interest by enforcing the understanding that was had touching the rent.

5. It is unnecessary to consider the other assignments of error in the motion for a new trial, as they are unimportant, and the views above given necessarily control the case and lead to an affirmance of the judgment.

*Judgment affirmed. All the Justices concurring.*