[No. 11721. *En Banc.* December 11, 1914.]

## PUGET SOUND STATE BANK, *Respondent*, v. JOHN GALLUCCI et al., *Appellants.*[1]

MUNICIPAL CORPORATIONS—PUBLIC WORKS—CONTRACTOR'S BOND—PERSONS PROTECTED—LOANS—"PERFORMANCE OF CONTRACT." Moneys loaned by a bank to a city contractor for the purpose of paying for labor performed and materials used in an improvement, are "debts, dues, and demands incurred in the performance of the work," and are secured by the contractor's bond conditioned as required by Rem. & Bal. Code, § 1159, that the contractor "shall pay all laborers, mechanics, subcontractors, and materialmen, and all persons who shall supply said principal or subcontractors with provisions and supplies for the carrying on of said work, all just debts, dues and demands incurred in the performance of said work," where the contract itself further stipulated that the contractor "will pay all just debts, dues and demands incurred in the performance of the work," and the bond was further conditioned to faithfully perform all of the provisions of the contract.

SAME—STATUTES—CONSTRUCTION. In such a case, the strict construction applicable to laws in the nature of lien laws are not to be applied, since the rights of the claimant and the obligations of the surety rest upon contract.

SAME—CONTRACTOR'S BONDS—EXCESSIVE CLAIMS—EFFECT ON LIABILITY. The right to recover upon a contractor's bond, given to secure performance of the contract and the payment of laborers, materialmen, and all just debts incurred in the performance of the work, is not impaired by reason of an excessive statement of the amount due on the claim, where no fraud was shown, proof of the exact sum was not then in the hands of the claimant, and the right of recovery did not rest entirely upon the statute, but on the contractual obligations of the bond, thereby avoiding a strict construction of the statute.

SAME—CONTRACTOR'S BOND—OBLIGATIONS OUTSIDE STATUTE. Obligations of a bond given by a contractor on city work to secure labor-

[1]Reported in 144 Pac. 698.

ers, materialmen, and so forth, are enforcible, although they are additional to and outside of the conditions required by the statute.

PAYMENT—APPLICATION OF PAYMENTS. A surety upon a contractor's bond, liable for money loaned by a bank to the contractor, is not entitled to have money, paid from time to time by the contractor to the bank, applied upon the surety's obligation, where the money was paid by the contractor on his indebtedness without any directions as to its application.

INTEREST—CONTRACTOR'S BOND—LIABILITY. The amount due from a surety on a contractor's bond to secure laborers, materialmen, etc., and debts incurred in the performance of the contract, under Rem. & Bal Code, § 1159, draws interest at 8 per cent, where so provided in the contract evidencing the debt secured by the bond, as the interest was a legal part of the debt.

MUNICIPAL CORPORATIONS—PUBLIC WORKS—CONTRACTOR'S BOND—RIGHT TO RECOVER—ESTOPPEL. A party, secured by a contractor's bond on public work, is not estopped from pursuing his remedy on the bond by the fact that he took assignments from the contractor of portions of his pay from the city, where he took them only as security, and applied them to pay debts due on the contract.

ABATEMENT AND REVIVAL—DIFFERENT JURISDICTIONS—SIMILARITY OF SUITS. An action in equity in the Federal court, akin to an action *in rem* seeking an adjustment of funds as between creditors and others, cannot be pleaded in abatement of an action at law in the state courts to recover a personal money judgment.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered November 26, 1913, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*John W. Roberts* and *George L. Spirk*, for appellant National Surety Company.

*Walter M. Harvey* and *Donworth & Todd*, for respondent.

PARKER, J.—The plaintiff bank seeks recovery from the defendants upon three bonds, executed by the defendant Gallucci, as principal, and the defendant surety company, as surety, to secure debts incurred by Gallucci in the performance of the work of three contracts entered into between him and the city of Tacoma for the construction of three local improvements for the city. The bonds were executed in com-

pliance with the act of 1909, entitled "An Act requiring
bonds from contractors contracting to do public work, con-
ditioned to pay laborers, mechanics, materialmen and others."
Laws of 1909, p. 716; Rem. & Bal. Code, §§ 1159, 1160, 1161
(P. C. 309 §§ 93, 95, 97). However, as we proceed, it may
appear that the bonds, in terms, secure debts incurred in the
performance of the work which possibly were not, by the ·
strict terms of the statute, required to be secured. The bank
rests its right of recovery from the surety company princi-
pally upon the theory that it loaned money to Gallucci for
the purpose of, and which was actually used in, paying for
labor performed upon, and material used in, the construction
of improvements, and that it thereby became one of the class
of persons for the benefit of whom the bonds were given. Trial
was had before the court, a jury being waived, which resulted
in judgment in favor of the bank and against both Gallucci
and the surety company upon each of the three bonds, from
which judgment the surety company has appealed.

In March, 1912, Gallucci entered upon negotiations with
the officers of the bank, resulting soon thereafter in an un-
derstanding between them that the bank would loan to him,
from time to time, such sums as would be required by him
to pay debts incurred in the construction of local improve-
ments for the city of Tacoma, under certain contracts which
it was contemplated might be awarded to him by the city. At
the time, he was not a customer or depositor of the bank.
Soon thereafter, on March 27, 1912, Gallucci deposited, of
his own moneys, in the bank the sum of $680, and on the
same day was given an additional credit by the bank of
$690, the proceeds of a loan that day made to him by the
bank, in compliance with their understanding. Thereafter,
from time to time, up until November 10, 1912, many other
loans were made to Gallucci by the bank, aggregating the
sum of $32,000, upon which indebtedness there was paid by
Gallucci to the bank $10,863.51. We think the evidence
warrants the conclusion that the $680 deposited by Gallucci

on March 27, 1912, at the beginning of his relations with the bank, was the only money or credit he ever had in the bank aside from the credits he had therein which were the proceeds of loans made to him by the bank, in pursuance of their understanding which we have noticed. Gallucci was awarded and entered into several contracts for the construction of local improvements for the city, among which were the following: District No. 1101, for $23,000 on April 1, 1912; district No. 840, for $4,664 on July 18, 1912; district No. 842, for $1,540 on September 4, 1912. Each of these contracts contains, among other stipulations, the following:

"That the party of the second part [Gallucci] . . . will pay all just debts, dues and demands incurred in the performance of said work."

This stipulation, we note, is unqualified by any other language of the contract. At the respective times of entering into these contracts, there was entered into, and delivered to the city by Gallucci, as principal, and the surety company, as surety, the three bonds here sued upon, each being in the amount of the contract with which it was given, conditioned for the faithful performance of the contract, and also that Gallucci:

"Shall faithfully perform all of the provisions of said contract in the manner and within the time therein set forth, and shall pay all laborers, mechanics, sub-contractors and materialmen, and all persons who shall supply said principal or sub-contractors with provisions and supplies for the carrying on of said work, all just debts, dues and demands incurred in the performance of said work."

This quoted condition of the bond is, in substance, the condition required by § 1 of the Laws of 1909, p. 716; Rem. & Bal. Code, § 1159 (P. C. 309 § 93). Within thirty days after the completion of each of these contracts, the bank filed with the city council notices of its claims against these several bonds for the claimed balance due it upon the loans

theretofore made to Gallucci for the purpose of paying debts incurred in the construction of the improvements; these notices being as prescribed by the law of 1909 as a prerequisite to the prosecution of an action upon the bonds by the bank against the surety company. Rem. & Bal. Code, § 1161 (P. C. 309 § 97). Thereafter, this action was commenced, the bank claiming the amount due upon each bond by a separate cause of action. The trial court found, in substance, that the money loaned by the bank to Gallucci from time to time was so loaned to Gallucci for the purpose and with the understanding that it would be used in paying his debts incurred in the construction of the improvements for the city, and that the money so loaned was paid out for labor performed upon, and material used in, the construction of the several improvements here involved to the extent following:

For labor performed upon, and material used in,
    the improvement in District No. 1101........$15,787.46
For labor performed upon the improvement in District No. 840............................   1,371.75
For labor performed upon the improvement in District No. 842............................     157.75
To the total of these amounts, the court added interest at 8% per annum from the dates of the filing of the bank's claims with the city, amounting to ..................................   1,108.28
And rendered judgment against Gallucci and the surety company in the total sum of..........$18,425.24

Other facts will be noticed as may become necessary in our discussion of appellants' several contentions.

It is contended by counsel for the surety company that it is, in no event, liable upon its bonds to the bank for money loaned to Gallucci to pay debts incurred by him in the construction of the improvements, because such indebtedness is not included within the words of the bond or contract, "*all just debts, dues and demands incurred in the performance of*

*said work*," though such indebtedness may have been incurred and actually used for the express purpose of paying for labor performed upon, and material used in, the construction of the improvements. The real problem is, Does the language of the bonds and contracts render the surety company liable to the bank upon its bonds; that is, was the debt due from Gallucci to the bank "incurred in the performance of said work?" If the solution of this problem rested alone upon the language of the bond and statute, there would be fair ground upon which to rest the argument that the words "all just debts, dues and demands incurred in the performance of the work," not being preceded by the conjunctive "and," related to debts, dues and demands incurred and payable from Gallucci to the persons specifically named therein, to wit, "laborers," "mechanics," "sub-contractors," "materialmen," and persons furnishing "supplies for carrying on of said work." We will assume, for argument's sake, that the word "supplies," as there used, does not include money. It will be noticed, however, that the bonds not only secure these things in the language of the statute; but the bonds are also conditioned that Gallucci "*shall faithfully perform all of the provisions of said contract;*" and that one of the provisions of the contracts is that he "*will pay all just debts, dues and demands incurred in the performance of said work,*" which provision is unqualified by any other language of the contracts. We cannot escape the conclusion that this provision of the contracts includes debts incurred by Gallucci of the nature here involved; that is, that he incurred such debts to the bank "in the performance of said work," though this conclusion might not be correct were the bank's rights rested alone upon the language of the bonds and statute.

Our attention has been directed by counsel to several decisions, for the most part involving statutory liens and the question of what are lienable items under such lien statutes; invoking, by way of analogy, the principle that, under lien

laws generally, and especially under our own, lienable items are held to be only those things going into and becoming a part of the physical structure, or labor actually performed upon the structure, which, as we have noticed in some of our former decisions, does, in a sense, go into the structure. This principle, however, as we pointed out in *National Surety Co. v. Bratnober Lumber Co.*, 67 Wash. 601, 122 Pac. 337, results from the language of the lien statute, which prescribes, in substance, what are lienable items. We also noticed in that decision that the statute under which these bonds were given did not refer us to the lien statute for the determination of what claims are contemplated to be secured by the required bond as the former law requiring bonds from contractors constructing public work did, but that this law, by its own terms, prescribes what items are contemplated as being secured by bonds given in pursuance thereof.

Following this same line of thought, it is to be here noted that the provision of these contracts above quoted, which is also secured by the bonds here in question, carries us still farther away from the lien law provisions. Just as this law is to be looked to instead of the lien law to determine what debts are contemplated to be secured by the bond, so are we here to look to all of the provisions of these contracts which are secured by the bonds, rather than to the statute and the bonds alone to determine what debts, dues and demands are, in fact, secured by these bonds. In this way, we reach the ultimate problem in this branch of the case, which is, are the debts incurred by Gallucci to the bank within the meaning of the phrase "will pay all debts, dues and demands incurred in the performance of said work," as that expression is unqualifiedly used in the contracts.

Counsel invoke the rules of strict construction applicable to lien statutes, insisting that such rules are applicable by analogy in favor of the surety company in this case. While the decisions do, in a measure, seem to recognize an analogy between lien laws and laws of this nature, and regard such

laws as being, in a sense, in lieu of lien laws; yet we must remember that the right of the bank in this case does not rest alone upon the statute; but that it rests primarily upon contract. Indeed, the bank's right would be contractual even though there were nothing before us by which to measure the surety company's obligation to the bank other than the language of the bonds, although that is the language of the statute. The bonds are no less contracts because they happen to be entered into in pursuance of the statute. The obligation, therefore, resting upon the surety company is, in its last analysis, a contractual obligation voluntarily assumed by that company. And since that company, as the record here shows, is engaged in the surety business, we must assume that it voluntarily entered into this contractual obligation in consideration of the usual premiums paid to it therefor. We think, therefore, we are not restricted in our view of the surety company's obligation by any rule of strict construction applicable to lien laws, nor to any rule of strict construction favoring sureties.

The decisions of the courts to which our attention has been directed are of but slight aid to the solution of the real question here involved. Indeed, we know of no decision which is directly in point. We will, however, notice some which may be regarded as having some slight bearing upon the question presented. In *Strickland v. Stiles*, 107 Ga. 308, 33 S. E. 85, there was involved a contract lien given by a tenant to his landlord upon the crop to be produced upon the land, to secure the landlord "for supplies furnished and to be furnished to me by said landlord or assign to make my crops the present year." Among the items claimed to have been furnished in pursuance of this contract by the landlord was money. This was held to be "supplies" within the meaning of the lien contract. This decision, it seems to us, comes the nearest being in point in our present inquiry, of any decision to which our attention has been called. Yet it may be regarded as distinguishable from the present case, in view of the fact that

the question arose between the tenant and the landlord's assignee of the contract; the principle involved being the same as if the controversy had been between the original parties to the contract. The contract was not made for the benefit of those who were, at the time of its making, strangers to it. The problem was also narrowed to the one question of whether the word "supplies" meant money. We are not here called upon to determine whether money loaned is "supplies," but whether or not it is a debt incurred in the performance of the work. That case, however, deals with a contractual obligation as the present case does, and not with a statutory lien right.

In *Cadenasso v. Antonelle*, 127 Cal. 382, 59 Pac. 765, there was involved a contractor's bond securing payment to "all persons who perform labor or furnish materials for the parties of the second part in said contract," and it was held that a loan of money to pay for material so furnished was not secured by the bond. The bond there involved, however, did not contain any provision relative to debts incurred in the performance of the work.

In *Smith v. Bowman*, 32 Utah 33, 88 Pac. 687, 9 L. R. A. (N. S.) 889, there was involved the obligation of sureties upon a contractor's bond in connection with a contract upon public work, conditioned that the contractors "shall duly and promptly pay and discharge all indebtedness that may be incurred . . . in carrying out the said contract, and complete the same free of all mechanic's liens," followed by the provision, "this bond is made for the use and benefit of all persons who may become entitled to liens under the said contract, according to the provisions of law in such cases made and provided." This bond was held not to secure those furnishing material for the building, since it involved the construction of a public building against which no liens could be asserted, it being held that the language of the bond was therefore inoperative to protect any such claimants. A note to this decision in 9 L. R. A. (N. S.) 889, indicates that this

holding is in harmony with the prevailing views of other courts.

The following decisions, relied upon by counsel for appellant, holding, in effect, that money loaned to pay for "labor," "materials," "supplies" and "articles of necessity" will not be regarded as being within the meaning of any of these enumerated things, all have to do with statutory lien rights and do not involve any question of contractual obligations: *Godeffroy v. Caldwell*, 2 Cal. 489, 56 Am. Dec. 360; *Shaw & Co. v. Grant*, 13 La. 52; *Steamboat James Battle v. Waring*, 39 Ala. 180; *Dart v. Mayhew & Co.*, 60 Ga. 104; *Gaylord v. Loughbridge*, 50 Tex. 573; *First Nat. Bank of Muscogee v. Campbell*, 24 Tex. Civ. App. 160, 58 S. W. 628; *Williams v. Bradford* (N. J. Eq.), 21 Atl. 331. None of these decisions, as we read them, have to do with a right secured by the language of these contracts, which language becomes in effect the conditions of the bonds sued upon.

Counsel for appellant places some reliance upon our recent decisions in *Standard Boiler Works v. National Surety Co.*, 71 Wash. 28, 127 Pac. 573, 43 L. R. A. (N. S.) 162, holding that payment for repairs upon a steam shovel used by a contractor upon public work was not secured by the bond; and also *City Retail Lumber Co. v. Title Guaranty & Surety Co.*, 72 Wash. 300, 130 Pac. 345, where it was held that payment for ties used by a contractor in his temporary railway as part of his equipment was not secured by the bond. It is true that the holdings in those cases were rested largely upon the theory that the repairs and the ties did not go into, and become a part of, the improvement, following by analogy the rule in statutory lien cases; and that the debt incurred therefor was not incurred in the performance of the work. While we think such is the rule as to labor and materials furnished, it does not follow that money furnished and paid for labor actually performed upon, and materials actually used in, the construction, should not be regarded as a debt incurred in the performance of the work, within the meaning of the

language in these contracts which the bonds were given to secure.

Counsel for appellant also call our attention to, and place some reliance upon, our decision in *Gate City Lumber Co. v. Montesano*, 60 Wash. 586, 111 Pac. 799, where we said:

"The question then arises, who is a materialman, and what is a just debt incurred in the performance of contract work, within the meaning of the act of 1909? In the case of *Fuller & Co. v. Ryan*, 44 Wash. 385, 87 Pac. 485, we held that a materialman could not claim a lien for material which was neither used in the building nor delivered on the ground for use therein. See, also, *Foster v. Dohle*, 17 Neb. 631, 24 N. W. 208; *Weir v. Barnes*, 38 Neb. 875, 57 N. W. 750. We are not disposed to place a broader construction on the term *materialman*, and *just debts incurred in the performance of contract work*, under this statute. A more liberal construction would permit of the grossest frauds on the part of contractors, and is not necessary for the protection of *bona fide* materialmen."

These observations were made only with reference to the question of the extent the lumber furnished was used in the construction; recovery being restricted to the amount so used, though more might have been contracted for. In the present case, the trial court took great pains to limit the bank's recovery against the surety company to so much of the money loaned to Gallucci as could be traced in payments made therefrom for labor actually performed upon, and material actually furnished and consumed in, the construction of the improvements. We think the evidence fully warranted the trial court in concluding that the money so loaned was so used to the extent found by the court. We are of the opinion that, under the terms of these bonds and the provisions of these contracts, the performance of which the bonds were given to secure, the surety company was properly held liable to the bank for so much of the money, loaned by the bank to Gallucci for the purpose of paying debts incurred in the making of the improvements, as was so used. *Hurley-*

*Mason Co. v. American Bonding Co.,* 79 Wash. 564, 140 Pac. 575, is in harmony with this conclusion though not directly in point.

It is contended by counsel for appellant that the bank should be denied the right to recover against the surety company because the bank filed its claims with the city in an amount materially exceeding that which was due it upon the several bonds. It is true that the claims so filed by the bank were much larger in amount than was finally found by the court to be due it upon the several bonds. There is some reason, under the evidence, for believing that the bank did knowingly state the amounts of its several claims as being somewhat larger than it was entitled to as against the several bonds. At the time of filing the claims by the bank, Gallucci, had failed to complete his contracts with the city and the surety company had proceeded with their completion. The bank did not then have access to Gallucci's books or checks, nor was it in possession of other evidence which would enable it to determine with any degree of accuracy the amount of the monies loaned by it to Gallucci that had been paid out for labor and material going into the improvements; such payments having been made by checks returned to Gallucci by the bank from time to time. It seems quite clear to us that there was no actual fraud on the part of the bank in filing its excessive claims, nor did the fact that the claims were excessive result in prejudice to the surety company in the least. The bank was, by the court, required to assume the burden of proof as to the amount of the money loaned by it to Gallucci which went into the construction of each particular improvement and its award was limited by the court accordingly. Again, we are reminded that the obligation of the surety company upon these bonds is not statutory, but contractual, and we apprehend that the rule touching excessive claims filed under mechanics' lien statutes where the right rests entirely upon the statute ought not to be applied with strictness against the bank in this case. *Strandell v. Moran,*

49 Wash. 533, 95 Pac. 1106; *United States Fidelity & Guaranty Co. v. United States for the benefit of Bartlett*, 231 U. S. 237. We are of the opinion that the right of the bank to recover upon these bonds is not impaired because of its statement of excessive amounts in its claims against the bonds, filed with the city.

Some contention is made that we should regard the city's right to recover upon the bonds the same as if we had before us the bonds only, with their required statutory conditions, and not the broader provisions of the contracts touching debts incurred in the performance of the work, which we have noticed was also secured by the bonds. The fact, however, that the bonds in connection with the provisions of the contracts secured thereby are farther reaching than the strict statutory conditions of such bonds, we think, does not render the farther reaching conditions here involved inoperative or void. The law seems to be well settled that bonds of this nature may be required by, and given to, a public corporation in excess of, or without any statutory authority and the beneficiaries thereunder be none the less entitled to recover thereon. *Smith v. Bowman*, 32 Utah 33, 88 Pac. 687, 9 L. R. A. (N. S.) 889; *Denver v. Hindry*, 40 Colo. 42, 90 Pac. 1028, 11 L. R. A. (N. S.) 1028. This very statute seems to recognize the city's right to require conditions in the bond other than those specifically required by the statute. Rem. & Bal. Code, § 1161 (P. C. 309 § 97).

It is contended by counsel for appellant that, in any event, the surety company is entitled to have credited upon its liability under the bonds the sum of $10,863.51, paid to the bank upon its indebtedness. We think the answer to this is that when this sum was paid to the bank, upon Gallucci's indebtedness, the bank was not directed by Gallucci to apply it upon any particular portion of the indebtedness. It would seem plain, therefore, that the bank might apply it according to its own pleasure. It was not required to apply it, we think, upon the portion of the indebtedness which it was en-

titled to make claim for against the bonds. Nor do we think the fact that this money came from the proceeds of district No. 1101 would change the bank's rights in this regard. It is practically the same as if the money or proceeds had been paid by the city to Gallucci and then by Gallucci to the bank upon his indebtedness, although it appears that it was paid by the city to the bank upon the order or assignment of Gallucci.

The loans made by the bank to Gallucci were evidenced by promissory notes executed by Gallucci and delivered from time to time to the bank, which notes all contained a provision for eight per cent interest upon the sums so loaned. In rendering the judgment, the trial court awarded interest to the bank upon the amounts awarded upon the several bonds from the date of the filing of the claim by the bank with the city against such bond. It is insisted that the court was in error in allowing this interest. We are unable to agree with this view. The contract for interest, as between Gallucci and the bank was clearly legal, the rate not being usurious. Had Gallucci bought material of a materialman and agreed to pay eight per cent interest on the purchase price thereof until paid for, it seems to us that it could hardly be seriously contended that such interest might not be included in a claim filed therefor against the bond. This contract as to interest upon the loan, we think, must be regarded in the same light. We conclude that the court did not err in allowing interest at eight per cent, from the date of filing the claims with the city.

Some contention is made that the bank is estopped by the fact that it received assignments from Gallucci of money coming to him as proceeds of his improvement contracts with the city. The evidence before us is not very clear as to the exact nature of these assignments or as to the total amount thereof. It seems clear, however, that they were made only as security and that the bank received from that source only the $10,-863.51 we have already noticed. We are unable to see that

the bank's claim against the bonds was in any way impaired by these assignments, which were taken merely as security. No authority has been cited so indicating.

It is contended that the court erred in overruling the surety company's plea in abatement wherein it set up a prior action pending in the Federal court, which, it claimed, involved this same controversy. We think the answer to this contention is that the action in the Federal court, as appears by the surety company's plea in this case, was an action in equity wherein the surety company was seeking to have its claim upon the fund in the hands of the city, the remaining portion of the contract price, adjusted as between it and the bank and many other claimants against that fund—creditors of Gallucci. In *Caine v. Seattle & Northern R. Co.*, 12 Wash. 596, 41 Pac. 904, this court held that a proceeding *in rem* in a United States court was no bar to an action by the same plaintiffs against the same defendant in the state court to recover a personal judgment upon the same cause of action. This is seemingly in harmony with the weight of authority. It is true, in the later case of *State ex rel. Scandinavian-American Bank v. Tallman*, 29 Wash. 411, 69 Pac. 1115, a proceeding in the Federal court, which was, in substance, a proceeding *in rem*, was held to be a bar to another proceeding in the state court of the same nature. Another exception to the general rule that an action in a Federal court will not abate an action in a state court is where an action in a state court has been removed to the Federal court and a new action of the same nature commenced in the state court. *Louisville & N. R. Co. v. Newman*, 132 Ga. 523, 64 S. E. 541, 26 L. R. A. (N. S.) 969. It is plain that the action in the Federal court here sought to be set up in abatement of this action is an action in equity, and in a measure akin to an action *in rem*, while this is a pure law action seeking nothing but a personal judgment against the surety company. We are of the opinion that the plea in abatement was properly overruled. 1

Cyc. 39.   See note in (*Willson v. Milliken*, 103 Ky. 165, 44
S. W. 660) 42 L. R. A. 449.

All other contentions made by counsel for appellant in-
volve questions of fact.   We have read the entire record and
are convinced therefrom that the court properly decided such
questions in favor of the bank.

The judgment is affirmed.

MOUNT, MORRIS, GOSE, ELLIS, and MAIN, JJ., concur.