Argued March 2, affirmed March 27, 1928.

# STATE EX REL. HAGQUIST *v.* UNITED STATES FIDELITY & GUARANTY CO. ET AL.

### (265 Pac. 775.)

**Highways—Loaning Money to Contractor to Pay Labor and Purchase Material for Highway is not Ipso Facto "Supplying Labor or Material" (Or. L., § 2991).**

1. Loaning of money to contractor constructing a public highway to pay for labor and to purchase material to be used thereon does not *ipso facto* become a furnishing of labor or material within Section 2991, Or. L., providing that persons supplying labor or material for the work provided for in such contract shall have the right of action therefor, and may bring suit thereon in the name of the state.

**Highways—State Highway Commission may not Exact from Contractor Bond Other Than That Specified by Statute (Or. L., § 2991).**

2. The state highway commission, being a board of special and limited powers, is not authorized to exact from contractor building a state highway a bond other or different from that specified in Section 2991, Or. L., providing that contractors on public works must give bond for benefit of laborers and materialmen.

**Highways—Mechanics' Liens—Mechanics' Lien Statutes and Statute Requiring Bond of Public Contractor, Conditioned on Payment of Laborers and Materialmen, Being Remedial are Liberally Construed (Or. L., § 2991).**

3. Since the objects embraced in the mechanic's lien statutes and Section 2991, Or. L., providing that contractors on public works must give bond for benefit of laborers and materialmen, are remedial, they should be liberally construed.

**Courts—Question Whether Highway Commission may Include in Contractor's Bond Liabilities not Within Statute is Stare Decisis Under Former Opinion Holding It cannot (Or. L., § 2991).**

4. Question whether the highway commission may include in contractor's bond, required by Section 2991, Or. L., liabilities not

included within the requirement that contractor give bond for benefit of laborers or materialmen, is *stare decisis* under former opinion of the Supreme Court, holding that liabilities not included in statute are not within intendment thereof.

**Highways—Money Loaned to Contractor Held not Expended Within Bond and Statute so as to Enable Lender Thereof to Collect It in Name of the State (Or. L., § 2991).**

5. Although money may have been loaned to a contractor to complete his contract to build part of a state highway system, it was not loaned within intent of contractor's bond and Section 2991, Or. L., providing that contractor give bond for benefit of laborers and materialmen, so that lender thereof may sue on the bond to collect the money so loaned in the name of the state.

Highways, 29 **C. J.**, p. 612, n. 54, p. 613, n. 79.

From Coos: John C. Kendall, Judge.

Department 1.

This is an action brought by the state on the relation of the use plaintiff, William Hagquist, to recover upon a bond given by the defendant United States Fidelity and Guaranty Company, a corporation, surety company, to secure the faithful performance by the Scandia Shipbuilding Company of a contract entered into by said company and the State of Oregon, acting by and through the state highway commission, for the construction of a section of a state highway known as the Pacific Highway, said section being designated as the "Halsey-Harrisburg section of the Pacific Highway in Linn County." The work on this section is referred to in the pleadings as Job No. 15 so as to distinguish it from another contract by the same company designated as Job No. 14. Hereinafter the defendant contracting company will be designated as the Scandia Company and the defendant bonding company as the Surety Company.

The bond is as follows:

"Know All Men by These Presents: That we, Scandia Shipbuilding Company, as principal, and

United States Fidelity and Guaranty Company of Baltimore, Maryland, as surety, are jointly and severally held and bound unto the state of Oregon, in the sum of Ninety-three thousand, one hundred and forty-one dollars ($93,141.00) for the payment of which we jointly and severally bind ourselves, our heirs, executors, alministrators and assigns, and successors and assigns, firmly and by these presents.

''The condition of the bond is such that, whereas on the ninth day of May, 1922, the said Scandia Shipbuilding Company, principal herein, made and entered into a certain contract, copy of which is hereto annexed, with the state of Oregon, and which contract together with the plans and specifications, general and special provisions, is hereby made a part hereof, by the terms, conditions and provisions of which the said Scandia Shipbuilding Company, principal herein, agrees to pave, with cement concrete, the Halsey-Harrisburg section of the Pacific Highway in Linn County, to furnish all necessary machinery, tools, apparatus, material and labor, and to complete the work in the most substantial and workmanlike manner according to said plans and specifications, and such modifications to the same as may be made, and other directions as may be given, in accordance with the terms of the contract; to repair and correct without delay all defects which may appear in the hard surfacing or pavement on the highway constructed under this agreement, within one year from date of the completion and acceptance of said highway construction, and to maintain said hard surfacing and pavement for a period of one year after completion and acceptance of the same.

''Now, therefore, if the principal herein shall faithfully and truly observe and comply with the terms, conditions and provisions of the said contract, in all respects, and shall well and truly and fully do and perform all matters and things by him undertaken to be performed under said contract, upon the terms proposed therein and within the time prescribed therein, or as extended as provided in the general

provisions; and shall indemnify and save harmless the state of Oregon, the state highway commission, its officers and agents, against any direct or indirect damages that shall be suffered or claimed, or injuries to persons or property during the construction of said work, and until the same is accepted; and shall promptly pay all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such laborers, mechanics or subcontractors with material, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work; and shall pay said state of Oregon such liquidated damages as may accrue to said state under said contract; and shall in all respects faithfully perform said contract according to law, then this obligation is to be void, otherwise to remain in full force and effect.

"Witness our hands this 2d day of June, 1922."

The Scandia Company failed to pay many of its bills for materials and supplies and the Surety Company was compelled, by reason of such failure, to pay them. During the progress of the work, the Scandia Company borrowed various sums of money from banks, not necessary to be mentioned here, and on November 20, 1922, presumably to assist the Scandia Company in its operations, William Hagquist, Conrad Hagquist, John Hillstrom and Otto Edlund, stockholders in the Scandia Company, each borrowed $5,000 from the First National Bank of South Bend, each giving his promissory note for said sum with approved surety, said notes being payable on demand with 8 per cent interest from date until paid. These notes were treated as cash deposited to the credit of each stockholder in his own name and each thereafter drew his check in favor of the Scandia Company for $5,000, which sum was deposited in the bank to the credit of the Scandia Company, which already

had a deposit of $2,258.04, making its total credit at the bank at the close of this transaction, $22,258.04 which sum was all checked out and used by the company in its various operations, leaving it still a debtor for claims for material and supplies and a debtor to the relator William Hagquist and Conrad Hagquist, John Hillstrom and Otto Edlund in the sum of $5,000 each. All these claims were, after the default of the Scandia Company, assigned to the relator, who, in the name of the state, brings this action stated in four separate causes identical except as to the names of the assignors. Before assignment, the relator and each of the assignors gave notice as required by Section 2991, Or. L., which notice is in all respects in the form required by said section, where material, labor or supplies are furnished; and if money loaned a contractor and used by him for the purpose of performing the work is to be deemed labor, material or supplies, is sufficient in substance to authorize the claimant to bring action on the bond given by the Surety Company. That part of the notice, which is of special importance here, is as follows:

"To the state of Oregon and to the secretary of state thereof, and to the highway commission thereof:

"Notice is hereby given that the undersigned, William Hagquist, has a claim for labor, material and provisions, performed and furnished, to-wit: For money loaned by the undersigned to Scandia Shipbuilding Company in the amount of Five Thousand Dollars ($5,000.00) which sum was lent to said Scandia Shipbuilding Company, and which was and is a just debt due and demand incurred by said Scandia Shipbuilding Company in the performance of the work under the hereinafter described contract, and said funds, and all of the same were furnished

to and used by said Scandia Shipbuilding Company for and in the supply to said company of labor, materials, and provisions actually performed and furnished on the work under said contract, and the undersigned did thereby supply labor, material and provisions for the work under said contract.

"The said sum of money was so furnished and the said debt was so incurred by said company for the work of performing the requirements of that certain contract executed between the state highway commission of the state of Oregon, and the Scandia Shipbuilding Company relating to the construction of the Halsey-Harrisburg section of the Pacific Highway, Linn County, Oregon, being highway Job No. 535, and which work is described in said contract, which contract was dated May 9th, 1922. That payment has not been made for any part of said claim and that said claim is hereby made against the bond taken from the Scandia Shipbuilding Company, as principal, and United States Fidelity & Guaranty Company, as surety, which bond was conditioned for the performance of said contract and for the prompt payment of all laborers, mechanics, subcontractors and materialmen, and all such persons who shall supply all such laborers, mechanics, or subcontractors with material, supplies or provisions for carrying on such work, and all just debts, dues and demands incurred in the performance of such work. That said money was so loaned and advanced on or about the 20th day of November, 1922. That said sum and said debt so incurred is wholly due, owing and unpaid from the Scandia Shipbuilding Company to the undersigned.

"(Signed) WILLIAM HAGQUIST."

The complaint, which is too lengthy to be included here, states all the facts covered by the notice. If money loaned to a contractor, for the purpose of fulfilling his contracts, is to be held to be material or labor or supplies, or if the phrase, "and all just debts, dues and demands incurred in the performance

of such work,'' is to be construed as including money loaned to a contractor and by him used to pay for labor, material or provisions, and is to be construed as within the meaning and intent of the bond to the extent that the state is required by the statute to sue on the bond for the benefit of the person loaning the money, then the complaint is sufficient to cover such contention.

The defendant Surety Company answered denying substantially the allegations of the complaint. This case was set down for trial, being consolidated for that purpose with two other cases of a similar character. When the cases, as consolidated, came on for trial the defendant Surety Company demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, and also moved for judgment on the pleadings. A ruling on these motions was deferred by the court pending a hearing of the testimony. Testimony was then taken and the court sustained defendant's demurrer to the testimony and rendered a judgment dismissing the case. From that judgment defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. L. A. Liljeqvist, Mr. A. K. Peck* and *Mr. James T. Brand,* with an oral argument by *Mr. Liljeqvist.*

For respondent there was a brief over the names of *Mr. Chester A. Sheppard* and *Mr. John D. Goss,* with an oral argument by *Mr. Sheppard.*

McBRIDE, J.—For the purposes of this case, it may be conceded, although not herein decided, that the relator and his assignors loaned the sums of money to the Scandia Company as claimed in the

complaint, and that said moneys, as alleged, were actually expended by that company in paying for labor, materials and supplies used by it in the performance of Job No. 15.

The sole question here discussed is: Is the money so borrowed and expended within the intent of the bond and within the provisions of the statute so as to enable the relator to collect the money so loaned in the name of the state? The state is here as a plaintiff seeking to recover money not due or owing it, but as a statutory trustee for the benefit of relator. Upon principle, it would seem that the state's right to interpose as a plaintiff is a statutory duty which should be permitted only in the cases provided for its exercise, and that, while the statute, permitting it to interpose as a plaintiff in respect to the matter which may be included by fair implication as being within the contemplation of the statute, should not be extended to authorize actions to be instituted under the shadow of the great name of the state to cover hardships not within a fair and liberal construction of its terms. Such seems to have been the original view of counsel, who prepared the notice, served upon the Secretary of State as a preliminary to the commencement of the present action, wherein it is stated:

"Notice is hereby given that the undersigned William Hagquist, has a claim for *labor, material* and *provisions,* performed and furnished, to-wit: for *money loaned* by the undersigned to the Scandia Shipbuilding Company," etc.

1. The theory of plaintiff, at that time, evidently was that money furnished to pay for labor legally became *ipso facto* a furnishing of labor, and that money loaned and expended to pay the materialmen for material became, as a matter of law, a furnishing

of material, and thereby brought the plaintiff within those terms of the statute which *inter alia* expressly provides that ''such person or persons or corporation claiming to have supplied *labor* or *material* for the work provided for in such contract shall present and file with the secretary of state,'' *et cetera.* The underlying idea seems to have been that by some kind of legal alchemy money so furnished became transmuted into labor, material and provisions. Such is not the law. The same may be said as to provisions and supplies.

2. Whatever may be the rules as to municipalities acting under charter, or as to counties which are *quasi* corporations having for many purposes an identity of their own, the state highway commission is a board existing purely by statute and possessing only the powers granted by statute, or those necessarily implied from the powers expressly granted. It can contract for the construction of a highway, because the statute authorizes it so to do. It can require a bond from a contractor, because the law expressly requires it so to do. It can and must require such bond to be so conditioned as to provide that such contractor ''promptly make payment to all persons supplying him or them with labor or materials for any prosecution of the work provided for in said contract,'' and upon such bond the aggrieved person is authorized to invoke the name of the state in an action to recover for the value of such labor or materials. The state highway commission, being a board of special and limited powers, was not authorized to exact any other or different bond, or, at least, was not authorized to pledge the name and authority of the state as a plaintiff for the enforcement of any other or different bond. So the state has no stand-

ing to enforce as plaintiff any obligation beyond that provided by statute, and when the cases are analyzed it has never attempted to do so. Thus in *Clatsop County ex rel. Hildebrand* v. *Feldschau,* 101 Or. 369 (199 Pac 953, 18 A. L. R. 1221), where Feldschau had contracted with the county to perform work in the building of the county road and executed a contract in all respects similar to the one in the case at bar, it appeared that the relator Hildebrand had furnished the contractor with materials and supplies which, in the language of Mr. Justice BEAN, "consisted of camp equipment and utensils such as were used in a camp in construction work of this kind, which were only meant to be *used and to last during the period of improvement.*" In other words, they were consumed and used up in the course of the work being prosecuted. These were clearly within the statutory part of the bond as held by the decision of this court. Such of the goods furnished consisting of knives, forks and dishes as were not used up in the prosecution of the work were deducted from the relator's claim.

The claim of relator Judd and company was for goods, wares and merchandise consisting of men's wearing apparel, bedding and other things necessary for workingmen, which were sold to Feldschau and by him used in carrying on the said contract, and were exchanged by said Feldschau with his laborers for wages. The road, upon which the contractor was operating, was not situated near any town or village, and to keep his workmen clothed and supplied, it was necessary to have such supplies at hand. A workman could not work naked and could not well leave his work and go to Astoria every time he needed a pair of overalls or a jumper. To secure the greatest

efficiency of the working force, it was necessary to have these things at hand and Mr. Justice BEAN, in the course of his opinion, used the following language. The italics are the writer's to indicate some distinctions between that case and the case at bar. Among other matters, Mr. Justice BEAN said:

"Our statute enjoins the duty upon the state of Oregon, or any municipality, county or school district, in entering into a contract for the construction of any public work, to require the usual penal bond with sureties, with the additional obligations that the contractor shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in the contract, for the protection of laborers and materialmen, and provides that in case the contractor shall fail to pay for such work and materials, and the officers of the state of Oregon or any such municipality, county or school district within the state shall fail or neglect to require the execution of such bond, then the state of Oregon and the officers authorizing such contract, or the municipality, county or school district and the officers authorizing such contract, as the case may be, shall be jointly liable for such labor and materials. These provisions of our statute do not limit the authority of *officials of a county* in making a contract for public work. They do not prevent county officials from providing in such contract, and in a bond securing the performance thereof, for the payment of persons who shall supply 'such laborers, mechanics or subcontractors with materials, supplies or provisions for carrying on such work and all just debts, dues and demands incurred in the performance of such work.' "

It will be noted here that the goods furnished by the Judds were of a class similar to those included in the term "materials," and so nearly related that the rule *ejusdem generis* might well be applied.

Bouvier illustrates the application of the rule as follows:

"In the construction of laws, wills and other instruments, when certain things are enumerated, and then a phrase is used which might be construed to include other things, it is generally confined to things *ejusdem generis;* as, where an act (9 Anne, c. 20) provided that a writ of *quo warranto* might issue against persons who should usurp 'the offices of mayors, bailiffs, port-reeves, and other offices, within the cities, towns, corporate boroughs and places, within Great Britain' etc., it was held that 'other offices' meant offices *ejusdem generis,* and that the word 'places' signified places of the same kind; that is, that the offices must be corporate offices, and the places must be corporate places, 5 Term, 375; Pac. Abr., Information (D); 8 Dowl. & R. 393.

"So, in the construction of wills, when certain articles are enumerated, the term goods is to be restricted to those *ejusdem generis.* Bacon Abr., Legacies, B; 3 Rand. 191; 2 Atk. 113; 3 id. 61."

Overalls, mittens, jumpers and such things to protect laborers from the inclemency of the weather would seem quite necessary as provisions which are needful to keep them otherwise fit for their work. So that in line with our previous definition of "materials and supplies" hereinafter noted they might well have been included in the same category.

Passing this phase of the case for the present, but reserving further discussion of it for further consideration in this opinion, we call attention to another distinction between the case of *Clatsop ex rel. Hildebrand* v. *Feldschau, supra,* and the case at bar. As before remarked, the state highway commission is a board of special and limited authority; while, as to the matter of contracting for the building of county roads, the authority as to counties was practically

unlimited.    They had the authority limited only by the
taxing power and the method of obtaining jurisdiction
in the first instance to build such highways as seemed
proper; to contract for their construction and to
require such a bond with such conditions as might
seem to them, acting through the county courts, fit
and proper.    As to them, Section 2991, *supra,* was not
a grant of authority, but merely fixed a minimum as
to the conditions which a bond should contain.    On
the other hand, the power of the state highway com-
mission to contract is purely statutory and the
statute is the measure of that power.    They are au-
thorized to contract, but not to contract without re-
quiring a surety bond.    The kind of bond, which they
are authorized to require, is prescribed, and the
power of the state is placed behind them to enforce
a bond containing those conditions.    If new or ad-
ditional conditions are incorporated, they are, as
remarked in one case, "extra statutory," and being
extra statutory, are *ultra vires,* for the reason that
the commission possesses no extra statutory author-
ity.    This position seems clear to the writer, and but
for the fact that numerous decisions are cited by the
very able counsel for plaintiff in this case, as well as
in the case of *State ex rel. Weiser Loan & Trust Co.*
v. *Aetna Casualty & Surety Co.* (Or.), 265 Pac. 782,
which is a companion case, and the able and plausible
arguments of counsel in these cases, the opinion
might end here.    But, as the precise question, raised
here, has not been before urged in this court, it may
well refer to our previous decisions with a view of
clearing up supposed uncertainties.

3, 4. Before considering these decisions, it may be
proper to consider the intent of the lawmakers in
requiring a contract for highway construction to be

accompanied by a bond conditioned for the payment of debts incurred for labor and material. The reason seems obvious. The various mechanics, laborer and materialmen's lien laws apply only to private contracts. It was impossible for a laborer or material-man to impose a lien upon a courthouse or highway and have the building or road sold to satisfy his claim. Therefore, in order to protect this class of creditors and place them on an equality with the same class who furnished labor or materials to contractors with private parties, the statute, now existing, was enacted. The terms of the statute itself embrace no other object than the lien statutes, and while there are some *dicta* to the effect that the lien statutes furnish little aid in construing the provisions of bonds, such as those in the case at bar, it cannot be disputed that such bonds, when divested of their extra statutory conditions, are analogous, and, so far as the objects embraced therein being remedial, both the lien statutes and the bond statutes should be liberally construed. The tendency has been more and more in that direction in this state, and the writer is justified in saying that in no case, where the purely statutory requirements of the bond have been considered, has the construction been any broader than it would have been had the same parties been before the court in a suit for foreclosure of a laborer or materialman's lien. We are of the opinion that it was never the intention of the highway commission to go beyond the warrant of the statute and include in the bond liabilities, which this court had not held within the fair intendment of the statute. We have so distinctly held in *Fitzgerald* v. *Neal et al.*, 113 Or. 103 (231 Pac. 645), where a bond identical

with the one at bar was involved.   In this case, at page 117, we said:

"There is nothing, therefore, to be found in the bond which indicates an intent to enlarge the obligations of the surety beyond those required by statute. Hence, neither the original contractor nor the surety is liable for any labor or material unless such labor or material was furnished for the prosecution of the work provided for in the contract of the original contractor with the state."

And as a reason for so holding, we said:

"Sound public policy requires that all persons supplying a contractor with labor or material for the prosecution of public work should be compensated therefor.   Contractors performing public work oftentimes become insolvent.   Common experience teaches that in many instances credit for labor or material cannot be safely extended to contractors performing public work unless a guaranty of payment therefor is furnished by the contractor.   This guaranty is best provided by an undertaking such as that required by the statute.   The imposition upon the surety of any unjust and unreasonable liability would result in hampering and impeding the performance of public work, since contractors, if such liability was imposed, might find it impossible to procure surety bonds, and thus the beneficent purpose of the statute requiring a contractor to furnish a bond would be defeated and some other method to provide adequate security for the public would have to be devised.   For this reason public policy requires that the liability of the surety should include, but not be extended beyond, that prescribed by statute, namely, all labor and supplies furnished for the prosecution of the work provided for in the contract under which the work is being done."

So, the question may be considered *stare decisis* in this court.

These two cases have, however, been presented by counsel for appellant with such consummate ability and earnestness that we feel it is only fair to consider the cases cited by appellant, which they claim support the opposite view. The chief of these is *Puget Sound State Bank* v. *Galluci,* 82 Wash. 445 (144 Pac. 698, Ann. Cas. 1916A, 767), in which it appeared that the bank had loaned Galluci money for the purpose of carrying on and financing certain contracts which he had entered into with the City of Tacoma for the construction of certain local improvements.

At the time this contract was issued, the statute of Washington, Remington & Ballinger's Annotated Codes and Statutes of Washington, Section 1159, required all municipalities, contracting for municipal improvements, to require a bond with a surety company as surety conditioned that—

"Such person or persons shall faithfully perform all the provisions of such contract and pay all laborers, mechanics and subcontractors and materialmen, and all persons who shall supply such person or persons, or subcontractors, with provisions and supplies for the carrying on of such work, all just debts, dues and demands incurred in the performance of such work."

The act, under Section 1161, also contained the following significant provision:

"Provided further that any city or town may impose any other or further conditions and obligations in such bond as may be deemed necessary for its proper protection in the fulfillment of the terms of the contract secured thereby."

The contract was made part of the bond and among other things contained the stipulation "that the party of the second part will pay all just debts,

dues and demands incurred in the performance of the work.''

It will be seen that the bond contained all the statutory conditions; that in addition thereto the city, by the very terms of the statute, was authorized to add such further conditions as it should think proper, and that, in pursuance of this express authority, it exacted the condition above quoted. So, irrespective of the probable inherent right as an independent entity to exact such condition in addition to the statutory requirement, it had express legislative permission to do so, while here the highway commission had no authority to exact a bond, or to make a contract except that which was granted by the statute, and still less had it authority to pledge the name and authority of the state to collect debts not included in the bond which the statute required it to exact. And here again we advert to the fact that counties and other municipalities, who are in a measure independent entities having authority to make such improvements as such corporations usually make, may, in the absence of statutes, make their own contract and prescribe their own form of bond, or dispense with a bond altogether, and that as to them this statute is not a limitation on their power in that respect, but a command that they must exact at least the bond prescribed by statute. The broad distinction between the case of *State Bank* v. *Galluci* and the present one is that in that case the City of Tacoma had express legislative permission as well as implied authority to exact the bond which Galluci furnished and did so, while in the case at bar the highway commission had no authority, either statutory or by implication, to add a single condition to the bond required by statute, and such condition is *ultra vires* and void.

Several other decisions are cited from the State of Washington, which follow to a great extent the doctrine in the Galluci case. The fact that the Galluci case is cited in the Feldschau case, *supra,* which was a case in which the county was not precluded, as was the highway commission, from adding additional conditions to the statute, was not cited for the purpose of applying it to a case of this character where the name of the state is invoked as a use plaintiff to enforce a liability not created by any statute.

When we consider the decisions of this court in lien cases and see the liberal construction therein, we are led to the conclusion that it was the intent of the highway commission to cover all such cases and others *ejusdem generis,* rather than go beyond them and create common-law liabilities and require the state to go outside of its statutes to enforce the payment of them. The addition of the words "and all debts *et cetera*" was only by way of precaution so as to include all claims of a character similar to those which the courts had held covered by the statutory requirement.

In some of the cases cited by counsel for plaintiff in which counties and municipalities appear as use plaintiff, the contracts seem to recognize the fact that the county would not be authorized to sue upon an extra statutory bond unless expressly authorized by the contract or bond itself. Thus in *Multnomah County* v. *United States Fidelity & Guaranty Co.,* 87 Or. 188, 200 (170 Pac. 525, L. R. A. 1918C, 685), the contract contained the following provision:

"The contractor further agrees that any person who supplied labor or material for the prosecution of any work provided for under this contract is hereby authorized to institute an action against said contractor or his sureties on his own relation in the

name of the county, and to prosecute the same to final judgment for his own use and benefit. The contractor further agrees that all the provisions of the laws of the state of Oregon, applicable to the protection of subcontractors, materialmen and laborers engaged in carrying out the terms of this contract, are hereby made a part of this contract whether expressly incorporated herein or not.''

A like provision appears in the bond in the case of *Portland* v. *New England Casualty Co.,* 78 Or. 195 (152 Pac. 253), and is usual in all surety bonds required by city or county authorities in Multnomah County.

This indicates that the astute counsel for the City of Portland and of Multnomah County were of the opinion that the City of Portland, or the county of Multnomah, were not convinced that they could safely rely on an extra statutory covenant in an action *ex rel.,* but took precaution to contract independently that the county of Multnomah and the City of Portland should have the right to bring such action. While it seems probable that this precaution was unnecessary as to cities and counties for reasons already indicated, it at least indicates the view of able officials as to the limitations of the rights of parties as defined by statute.

5. Most of the cases cited by counsel involve contracts with counties or municipalities, who were not subject to the limitations as to contracts which apply to a mere board, which is neither a corporation nor a municipality, but an agent of the state and whose power does not extend beyond that granted by statute or necessarily implied from the powers expressly conferred. To go further, we may say that the mere loaning of money to a contractor, even though used by him to pay obligations contracted, is not a debt

created in the performance of the work. The parties who loaned the money were in no privity with the parties furnishing the materials or performing the labor. They took no assignment of the borrower's rights under the contract and no obligation from the borrower that it would apply the money upon a particular contract. Had the borrower concluded to build or buy a ship and to pay for it with the money thus loaned, it would have committed no breach of legal duty in so doing. The fact that the corporation used the money to pay for labor or provisions furnished to secure the completion of this contract could not make the lenders privies to the bond. That it was intended that the bond should redound to their benefit would open the door to a species of litigation that would render it impossible for a small contractor ever to obtain a bond. We have in this country a few large and wealthy contractors from whom a bond of this character would add little or nothing to the security of laborers or materialmen and whose wealth and standing is such that a surety company would consider the giving of such a bond a small risk. The result would be that the small contractor would be crowded out and a monopoly of road contracting would inure to wealthy contractors thus adding to the cost of improvements. We are not so far from the State of Washington as to be unable to see that this result actually followed in that state as a consequence of the ruling in the Galucci case, to the extent that the legislature of 1915 passed an act providing substantially that money loaned or advanced a contractor should not be held to be included in such bond: Session Laws of Washington, 1915, p. 61. Under the views here enunciated, such legislation is unnecessary so far as the highway commission is concerned.

This case furnishes a fair illustration of the injustice that would result from the adoption of the doctrine contended for by counsel. The lenders of this money were all stockholders in the corporation. It had a contract which they no doubt hoped would be profitable to it and therefore to themselves. To finance it properly, they loaned this money and the corporation gave the bond in question. It proved a losing venture and the surety was compelled to pay to laborers and materialmen for the company's defaults. The plaintiff now contends that it should not only do this, but repay also the money which the stockholders loaned to the corporation for its and, incidentally, their own benefit. The very statement of the proposition discloses the injustice of it and the danger of opening the door to this kind of litigation, and indicates that the highway commission, which is composed of fair men, could never have intended such a consequence as would result from the adoption of plaintiff's theory of the construction of the language of the bond.

Much more might be added and a more extended discussion of the authorities cited included, but the pressure of our labors precludes it.

The judgment of the Circuit Court is affirmed.

AFFIRMED.

RAND, C. J., and COSHOW and BROWN, JJ., concur.