Argued March 31; affirmed June 20, 1933

# UNITED STATES FIDELITY & GUARANTY CO.
## *v.* KLAMATH COUNTY ET AL.

(23 P. (2d) 133)

*J. H. Carnahan,* of Klamath Falls (T. R. Gillen-waters, District Attorney, of Klamath Falls, on the brief), for appellants.

*H. C. Merryman,* of Klamath Falls (R. B. Nason, of Portland, and Marshall S. Orr, on the brief), for respondents.

472

ROSSMAN, J. The complaint alleges that November 2, 1927, G. W. Brown and the County of Klamath entered into a contract whereby Brown undertook to construct a section of highway for the county; that at the same time the plaintiff, as surety, signed a bond guaranteeing Brown's faithful performance of his contract; that February 4, 1928, Brown abandoned performance of his contract; that later the plaintiff, with the consent of the Board of County Commissioners, completed performance of the contract; that during the progress of the work the County Commissioners approved estimates of the work done and money earned by the plaintiff which estimates of money earned, less retained percentages, were paid to the plaintiff; that September 15, 1928, the Board prepared the final estimate showing a balance of $4,746.76 due and payable to the plaintiff; and that December

22, 1928, the Board paid to the plaintiff $3,946.76. Judgment is sought for $800. The answer admits the execution of the contract, the execution of the bond, Brown's default, plaintiff's completion of performance, and payment to the plaintiff of $3,946.76 upon the final estimate. All other averments of the complaint are denied. Further answering, the defendants allege that December 15, 1928, the county engineer prepared a final estimate of the amount owing the plaintiff for the completion of performance of the aforementioned contract showing there was due to it $3,946.76; that a warrant was issued to the plaintiff for $3,946.76 in full payment of its account against the county; that the plaintiff accepted the warrant as payment in full of all charges against the county; and that the plaintiff "is now estopped and debarred to say, allege or claim that any other and further sums or amounts whatsoever are due or owing to it under or by virtue of said contract". This portion of the answer further alleges that one of the provisions of the contract stipulated that the acceptance of payment by Brown of the final estimate should constitute a release of Klamath county by him and his surety of all claims arising out of the contract, and that neither Brown nor the plaintiff, before accepting the warrant for $3,946.76, informed the defendants that the amount for which the warrant was drawn was erroneous or insufficient. The answer charges that, therefore, the acceptance of the warrant for the final estimate constituted "a final, agreed settlement and payment in full of all sums due to the plaintiff under or by virtue of said contract". Next, this portion of the answer alleges:

"And these defendants do further allege that the said plaintiff, after it took over the said G. W. Brown contract, hereinbefore mentioned, did not pay out for

labor, material, supplies or the like or at all the said sum of $800.00 in payment of labor, material or supply claims due to laborers or materialmen furnishing labor or supplies for the completion of said contract, but the said plaintiff is attempting to collect the said $800.00 from Klamath County when it did not earn the same and when it did not pay out to laborers or materialmen or others or at all the said sum of $800.00 or any part thereof; that all of the sum embraced in said $800.00 was paid out by the said original contractor, G. W. Brown, in payment of labor, material and supply claims, and all of the amount embraced in said $800.00 was applied and paid by said G. W. Brown on and for the performance of said contract, and there is nothing due to the plaintiff herein by reason of such payment of said sum by G. W. Brown, and the said plaintiff is estopped and debarred to claim the said sum or any part thereof of or from the defendants or either thereof''.

For a second further defense the defendants allege that January 12, 1928, Brown borrowed $800 from the Oregon Bank & Trust Company, giving his note therefor; that the $800 was expended by Brown in the performance of his contract; that in order to secure payment of the note he delivered to the bank an instrument dated January 12, 1928, addressed to the county clerk, signed by himself, and reading as follows:

"Please deliver to the Oregon Bank & Trust Company my warrants for the months of January and February, 1928, for estimate No. 3, Market Road District No. 9, Klamath County, Oregon''.

that at that time Brown had not yet defaulted in the performance of his contract; that the plaintiff did not undertake the completion of the performance of the contract until after February 12, 1928; that the plaintiff had knowledge of the assignment before it proceeded with the contract; that the sums mentioned in

the assignment were no part of the retained percentages; that the plaintiff knew that the county court would honor the assignment by paying to the bank the sum of $800; that on December 15, 1928, the county court paid the Oregon Bank & Trust Company $800; and that these facts estop the plaintiff from claiming that it is entitled to the recovery of $800 from the county. The reply admits that the county engineer prepared the final estimate; denies that the amount of the estimate was $3,946.76; alleges that its amount was $4,746.76; admits that a warrant for $3,946.76 was drawn in its favor; "admits that the acceptance of full payment upon the final estimate should have the effect of a release to the defendants by the said G. W. Brown or his surety, the plaintiff herein, of all obligations or claims arising out of said agreement"; denies that the plaintiff, before accepting the amount of $3,946.76, failed to apprize the defendants that the amount was insufficient; and alleges that there was no consideration for accepting a lesser amount than the amount actually due.

The evidence developed the following undisputed facts: November 2, 1927, the Board of County Commissioners of Klamath county and Brown executed a contract whereby the latter bound himself to improve a section of roadway in Klamath county and the county agreed to pay him for his services according to a schedule of payments set forth in the contract. The contract bound Brown to furnish a surety bond guaranteeing the faithful performance of the contract, which he did, the plaintiff becoming his surety. The contract also provides:

"Monthly estimates of the amount earned by the contractor will be submitted to the owner by the county engineer. Such estimates, less 20 per cent, will be paid

by warrant as partial payments. * * * When one-half the work has been completed the amount retained will be reduced to 10 per cent".

The contract further provides:

"When all work shall have been completed in accordance with the specifications attached hereto and made a part hereof to the satisfaction of the county engineer, he will make his final estimate which will include all sums retained from the partial payments and will have the effect of a certificate by him that the work under the contract has been completed and is accepted as such by the owner. The acceptance of payment upon the final estimate shall have the effect of a release to the owner by the. contractor of all obligations as a result of this agreement".

January 12, 1928, Brown borrowed $800 from the Oregon Bank & Trust Company, and in order to secure payment of the loan gave to the bank the assignment above quoted. February 4, 1928, Brown abandoned performance of his contract and on or about that day the Board of County Commissioners held a session at which were present the members of the Board, its legal advisor, the claim superintendent of the plaintiff, the local agent of the plaintiff, and its attorney.

The testimony of the witnesses who undertook to relate what occurred at that meeting does not harmonize. According to those who supported the county's position, the assignment from Brown in favor of the bank was discussed, and the Board informed the representatives of the plaintiff that the county would pay to the Oregon Bank & Trust Company $800 upon the assignment. According to the testimony of those who supported the plaintiff's claim, Brown left a large number of unpaid accounts when he abandoned the performance of his contract, and plaintiff's representative, at the meeting of February 4, therefore, insisted

that the county court must not honor the assignment. These witnesses testified that the plaintiff's spokesman informed the county court that it had no right to pay the bank anything whatever out of the contract moneys, and that the plaintiff would not complete performance of Brown's defaulted contract if the defendants honored the assignment. These witnesses testified that no one at that time declared an intention to honor the assignment. Mr. R. B. Nason, plaintiff's superintendent of claims for Oregon, testified that at the conclusion of the meeting the board announced that it would pay estimate No. 3 to the plaintiff, and that he thereupon declared that the plaintiff would complete the contract. Toward the close of the trial the Commissioners' Journal was brought forth. Its recital of the action taken by the Board on February 4th states:

"On motion duly made, seconded and carried, it was then decided that the contract for surfacing of Fremont Highway by G. W. Brown be completed by the bonding company and that all moneys be turned over to the U. S. Fidelity & Guaranty Co.".

No official testified that these minutes were erroneously written. Estimate No. 3 was actually paid to the plaintiff. It amounted to $579.08 and was paid to the plaintiff on or about February 18, 1928. December 15, 1928, the county engineer prepared his final estimate. After detailing in typewritten words and numerals the work that had been performed, the amounts owing therefor and the sums previously paid, the typewritten portion concluded with: "Balance due and payable on final estimate, $4,746.76". Immediately under this, written in pen and ink, appears these words: "Less amount due the Oregon Bank & Trust Company, $800, $3,946.76". The deduction of the $800 just mentioned from the total of $4,746.76 is the subject-matter of the

present controversy. The county engineer testified that he wrote the words just quoted. Upon the same day when the final estimate was prepared the county issued two warrants, one to the plaintiff for $3,946.76, marked "For No. 9. Final Estimate" and the other for $800 to the Oregon Bank & Trust Company, and marked "For No. 9". One of the county commissioners, referring to these two warrants as component parts of the final estimate, testified: "I think there was a warrant paid out to the Oregon Bank & Trust Company and the balance was paid to the Fidelity Insurance Company", and when asked, "$800 was actually paid to the Oregon Bank & Trust Company out of the final estimate, was it not"? replied, "Yes". Both the plaintiff and the bank cashed their warrants. All agree that Brown signed only the assignment dated January 12, 1928, and, as will be observed from its language, it assigned to the bank "my warrants for the months of January and February, 1928, for estimate No. 3". Apparently the members of the county court, the representatives of the plaintiff and the officials of the bank held no meeting after February 4th until December 15th, when the county court, the officers of the bank and the agent of the plaintiff again met. At that meeting plaintiff's representative denied that the court possessed any right to pay any part of the final estimate to the bank.

The $4,746.76 constituting the final estimate was compensation for material and labor supplied exclusively by the plaintiff except a part of that portion of it which constituted retained percentages. Of the latter sum it is obvious that the major part was for compensation for labor and materials supplied by the plaintiff.

Brown disbursed the $800 which he had borrowed from the bank in paying for labor and material. He left a large number of unpaid labor and material ac-

counts when he abandoned his work February 4th. The uncontradicted evidence shows that the plaintiff promptly discharged all of these bills and left no unpaid accounts whatever when it completed performance of Brown's contract.

The question now occurs, do the above facts support the judgment entered by the circuit court in plaintiff's favor or do they necessitate a reversal. It will be observed that the county court paid to the bank out of the final estimate, $800. The sole authority which it submits for so doing, apart from a matter which we shall mention later, is the assignment signed by Brown authorizing the county to deliver Brown's warrants for January and February, 1928, covering estimate No. 3, to the bank. Estimate No. 3 amounted to $579.08 and was paid to the plaintiff without any protest from anyone. Even now the defendants do not claim that they erred or were mistaken when they delivered to the plaintiff the warrant for estimate No. 3. Apparently they remain entirely satisfied with their action in delivering that warrant to the plaintiff. Somehow they seem to believe that they properly split into two parts the warrant covering the final estimate so as to give to the bank $800 of that estimate. The county judge, when asked, "Then why did you pay it out of the final estimate No. 11 in place of estimate No. 3"? replied, "As I remember, it was a matter that was discussed. The court investigated it from time to time. It was our desire to find out the places where this money had gone, and a representative of the Oregon Bank & Trust Company came to us and showed us that this money had been expended for labor, to pay for labor, on that contract; men who had actually sweated and worked on the work there, and we felt that it was only right

and just that when the Oregon Bank & Trust Company had made every effort to help out the contractor and had carried out the work thereby furnishing money to the contractor to give the men who had earned their daily bread by labor on this,—it was just and right that we should pay that money to them''.

■ The assignment was dated January 12, 1928, and the $800 was not paid to the bank until December 15, 1928. The assignment was of estimate No. 3 and stated that it was intended to transfer warrants to be issued in January and February, 1928. The $800 was paid out of the final estimate. This final estimate covered work and materials supplied by the plaintiff except that it also included the retained percentages of the work done by Brown up to the time when he abandoned the contract. Clearly, the assignment did not authorize the action taken by the county court.

■ The defendants cannot justify their action by the averments of the answer which allege that the $800 which they paid to the bank was for labor and material accounts. The bank supplied neither labor nor material. The mere fact that Brown used the $800 which he obtained from the bank to discharge accounts incurred by himself in the performance of his contract did not give the bank, as an assignee, any rights superior to those of the plaintiff as a surety. *State ex rel. v. U. S. Fidelity & Guaranty Co.*, 125 Or. 13 (265 P. 775). The averment of the answer that the defendants discharged the $800 for labor and material claims incurred by the plaintiff is entirely unsupported by any proof. The direct contrary is proven by uncontradicted testimony.

■ But the defendants contend that when the plaintiff accepted the warrant for $3,946.76 marked ''final

estimate'' pursuant to the contract which provided: ''The acceptance of payment upon the final estimate shall have the effect of a release to the owner by the contractor of all obligations as a result of this agreement'', that thereby the county was released from all obligations having their inception in the contract. But it seems obvious that the plaintiff never received the full final estimate. The county court diverted $800 of it to the bank, over the protest of the plaintiff. The final estimate itself shows that $4,746.76 was its amount and the warrant given to the bank shows that it is a part of the final estimate. The above-quoted provisions of the contract had no application until the warrant was delivered to the plaintiff for the amount of the final estimate.

A large number of propositions of law are argued in the briefs. As we view the situation, the above disposes of all issues.

It follows that the judgment of the circuit court is affirmed.

BELT and KELLY, JJ., concur.

RAND, C. J., did not participate in this decision.