On Rev. Code 1919, Sec. 1443, see annotations Kerr's Cyc. Code 1920, Civ. Code 2629.

## J. F. ANDERSON LUMBER COMPANY, Respondent, v. NATIONAL SURETY COMPANY, Appellant.

### (207 N. W. 53.)

(File No. 5437. Opinion filed January 23, 1926.)

1. **Stipulations—Waiver—Stipulation for Admission of Documents in Evidence Held to Preclude Objection to Copy on Ground of Lack of Identification of Signatures.**

   In action against surety, completing bridge contract, for materials sold to principal, stipulation of parties for admission of plans, specifications, contracts, etc., in connection with erection of bridge, held to preclude defendant from objecting to admission of copy, certified according to stipulation, on ground of lack of identification of signatures.

2. **Appeal and Error—Objection that Contract for Construction of Bridge Was Not Properly Authenticated for Admission in Evidence Is Not Preserved by Objection that It Is Immaterial.**

   In action against surety, completing bridge contract, for materials sold to principal, objection that copy of contract was improperly received, because signatures were not identified, held not preserved by objection that contract was immaterial to issues of case.

3. **Evidence—Certified Copies of Instruments, Forming Part of Files and Records of Highway Commission, Are Admissible.**

   In action against surety, completing bridge contract, for materials sold to principal, copy of contract for construction of bridge, forming part of files and records of highway commission, certified by secretary under seal, is admissible in evidence, under Laws 1919, Chap. 333, Sec. 3.

4. **Assignments—Parties—Assignment of Legal Title to Claim Held Sufficient to Sustain Suit.**

   In action against surety, completing bridge contract, for materials sold to principal, assignment of claim, passing legal title to plaintiff for purpose of collection, held sufficient, under Rev. Code 1919, Secs. 2306, 2308, to sustain action in name of assignee.

5. **Parties—Pleadings—Objection that Plaintiff Is Not Real Party in Interest Must Be Taken by Demurrer or Specific Plea in Bar.**

Objection that plaintiff is not real party in interest, and hence has no right to sue, must be taken by demurrer, if it appears on face of complaint, or, if not, must be specifically pleaded in bar.

6. Bridges—Principal and Surety—Surety on Bridge Contract Liable Under Bond for Other Materials Than Those Becoming Permanent Part of Structure.

Surety, completing bridge contract, held liable for materials sold to principal, not becoming permanent part of bridge structure, such as material for construction of temporary buildings at bridge site, for fuel and oil, machinery in use in unloading steel at railroad, and tools and equipment of crew, under clause obligating payment for supplies, tools, and appliances, and all claims incurred in carrying out contract; Code Civ. Proc., Secs. 696, 697, being inapplicable.

Appeal from Circuit Court, Davison County; HON. FRANK B. SMITH, Judge.

Action by the J. F. Anderson Lumber Company against the National Surety Company. From a judgment for plaintiff and from order denying defendant's motion for new trial, defendant appeals. Affirmed.

*Mather, Stover & Mather,* of Watertown, for Appellant.
*Hitchcock & Sickel,* of Mitchell, for Respondent.

(6) To point six of the opinion, Appellant cited: Pittsburg Plate Glass Co. v. Leary, 126 N. W. 271; Albright v. Smith, 51 N. W. 590; Stimson Mills Co. v. Los Angeles Traction Co., 74 Pac. 357; United States v. Morgan, 111 Fed. 474; Luttrell v. Knoxville etc. Railroad Co., 123 A. S. R. 737; Stewart Chute Lumber Co. v. Missouri Pac. Ry. Co., 49 N. W. 769; National Surety v. United States, 228 Fed. 577; Empire State Surety Co. v. The City of Des Moines, 132 N. W. 837; American Surety Co. v. Lawrenceville Cement Co., 110 Fed. 717; Basshor v. Baltimore & O. Railroad Co., 3 Atl. 285; United States v. City Trust Company, 23 App. D. C. 155; City of Alpena v. Title Guaranty & Surety Co., 12 N. W. 1126; Briscoe v. City Trust Company, 23 App. D. C. 155; Nye-Schneider-Fowler Company v. Bridges, Hoy & Co., 151 N. W. 942; National Surety Co. v. United States, 228 Fed. 577; John Schultz v. C. H. Quereau Company, 104 N. E. 621; City of Philadelphia v. Malone, 63 Atl. 539; United States v. United States Fidelity & Guaranty Co., 71 Atl. 1106; Kennedy v. The Commonwealth (Mass.), 65 N. E. 828.

Respondent cited:  McGarry v. Averhill, 31 Pac. 1082; Evans & Howard Fire Brick Company v. National Surety Company (S. D.), 173 N. W. 448; Chicago Lumber Company v. Douglas, 131 Pac. 563; Shannon v. Abrams, 157 Pac. 449, Ann. Cas. 1918E, 502.

CAMPBELL, J.  In May, 1921, the Northwestern Bridge & Iron Company, of Milwaukee, Wis., a corporation, hereinafter spoken of as the contractor, having submitted to the state highway commission of South Dakota its bid and proposal therefor, was awarded a contract for the construction of a steel bridge over the Cheyenne river on a portion of a state trunk highway in this state.  The contract so awarded was executed by the contractor and by the state of South Dakota, by its highway commission, and provided in substance as follows:

"Witnesseth, that the said contractor has agreed, and by these presents does agree, for and in consideration of the covenants herein contained and payments to be made as hereinafter provided, to furnish all materials, appliances, tools, and labor of every kind, and to construct in the most substantial and workmanlike manner, and in accordance with the plans and specifications therefor, the various items of work awarded the said contractor on the 14th day of May 1921, and located on a portion of a state trunk highway in Haakon and Ziebach counties, South Dakota, known as the Ft. Pierre-Midland-Eagle Butte road, beginning on the north bank of the Cheyenne river, section 32—9—24, and ending on the south bank of the Cheyenne river, section 32—9—24. The following is a description and location of the work: Seven (7) one hundred and fifty (150) feet riveted steel spans on concrete piers and abutments to be constructed over the Cheyenne river, 22 miles south of Eagle Butte, in section 32—9—24, Haakon and Ziebach counties, South Dakota.

"The said work shall be performed in accordance with the true intent and meaning of the plans and specifications therefor, including the special provisions, which plans and specifications, including the special provisions, are hereby referred to and made an essential part of this contract as fully and to the same effect as if the same had been set forth and shown at length in the body of this contract.  The party of the first part, however, reserves the right to make such alterations, additions, or deductions as are

in said specifications provided for, and this contract shall in no way be invalidated thereby.

"It is mutually agreed, by and between the parties to this contract, that the notice to contractors, the foregoing proposal, and the contract bond shall be bound herewith and are hereby made a part of this contract.

"The said contractor further agrees to pay all just claims for materials, supplies, tools, appliances, and labor, and all other just claims incurred by him or any of his subcontractors in carrying out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims.

"It is further understood and agreed, by and between the parties to this contract, that the work embraced under this contract shall be completed on or before the 15th day of November, 1921, unless such date of completion be set at a later date, as is specifically provided for in the specifications, and that the time of completion of said work is of the essence of this contract.

"In consideration of the faithful performance of the work embraced under this contract, according to the terms hereof, and to the satisfaction of the party of the first part, said party of the first part agrees to pay the contractor such unit or lump sum prices for the work actually done as are set forth in the proposal accompanying this contract, and in the manner and subject to the conditions as set forth in the said specifications."

And in connection with said contract the contractor furnished to and filed with the highway commissoin its contract bond, executed by the contractor as principal and by defendant herein as surety, in the penal sum of $92,429.15, which was in form an absolute obligation, subject to defeasance upon the following terms and conditions, and not otherwise:

"Whereas, said principal has entered into a certain written contract, bearing date on the 16th day of May, A. D. 1921, with the state of South Dakota, for the construction of a bridge on a portion of a state trunk highway in Haakon and Ziebach counties, South Dakota, known as the Ft. Pierre-Midland-Eagle Butte road, beginning on the north bank of the Cheyenne river in section 32—9—24, and ending on the south bank of the Cheyenne river in section 32—9—24:

"Now, therefore, the condition of the foregoing obligation is such that, if the said principal shall, well, truly, and faithfully comply with and perform all the terms, covenants, and conditions of said contract on his part to be kept and performed, according to the terms and tenor of said contract, and shall protect the said State of South Dakota against and pay any excess of costs as provided in said contract, and all amounts, damages, costs, judgments, which may be recovered against said state, or its officers or agents, or which the said state of South Dakota may be called upon to pay to any person or corporation by reason of any damages arising or growing out of the doing of said work or the repair thereof, or the manner of doing same, or the neglect of said principal or his agents or servants, or the improper performance of the said work by the said principal or his servants or agents or from any other cause growing out of the said contract, and if the above bounden principal, his heirs, executors, administrators, or assigns, shall and do well and truly pay or cause to be paid the wages stipulated and agreed to be paid to each and every laborer employed by the said principal or his agent, and all claims for materials furnished, then this obligation is null and void; otherwise, to remain in full force and virtue.

"And the said surety hereby stipulates and agrees that no change, extension, alteration, deduction, or addition in or to the terms of said contract, or the plans or the specifications accompanying the same, shall in any wise affect the obligation of said surety on this bond."

The bridge site was some 30 miles from Lantry, S. D., some 27 miles from Eagle Butte, S. D., and some 38 miles from Dupree, S. D., these being the nearest towns to the work, and all of them being small towns. The contractor commenced work in August, 1921, and continued on the work until some time in October, 1921, when it went into bankruptcy and a trustee was appointed. The contractor employed some 40 men on the work, and constructed at the site some temporary buildings, including one building which served as a cement shed and bunk-house combined, one which was a kitchen and dining room combined, and one which was used for tool house and office and living quarters for the engineers and foremen in charge, and the employees were housed and fed "on the job." There was no place nearer than

Dupree where food and shelter could have been provided. Shortly after the contractor went into bankruptcy, its trustee in bankruptcy formally abandoned all claims and liabilities in connection with the contract in question, and requested defendant surety company to take over the contract and complete the work, which defendant accordingly did, subletting the same to the Schreiber Construction Company, by a written agreement bearing date October 29, 1921, wherein the defendant surety company was the first party and the said Schreiber Construction Company the second party, whereby the second party agreed to go on and carry out said work in accordance with the provisions of the original contract; and which subletting contract provided in part as follows:

"4. The said party of the first part agrees to furnish to the said party of the second part, without cost to the latter, all fabricated and plain structural steel, reinforcing steel, rods, pipe, bolts, and rivets required for the completition of the original contract according to the plans and specifications therefor, such material to be furnished or delivered as follows:

"(a) All such material now on site of said work shall be considered fully delivered.

"(b) All remaining material shall be delivered f. o. b. at station of Lantry, South Dakota.

"5. The said party of the first part agrees to furnish without expense to said party of the second part, all of the cement and lumber now delivered at the site of said work.

"6. The said party of the first part agrees to furnish to and guarantee to said party of the second part and without cost or expense to the latter, the use of all equipment, machinery and construction tools, also all bunk, cook, office, supply, and other buildings now on the site of the work or delivered at Lantry for use thereon over which it has control or to the use of which it has any right.

"7. The said party of the second part agrees to properly insure said building against loss by fire, and to return said equipment, machinery and construction tools to Lantry, South Dakota, after the completion of this contract in as good condition as received, reasonable wear and tear excepted."

And the Schreiber Construction Company, under its contract with the defendant surety company, went ahead and completed the

bridge, starting the work in November, 1921, and finishing on April 20, 1922, making such use as they desired of the temporary buildings and materials not previously used by the contractor. Thereafter plaintiff, a lumber company, with its principal office at Minneapolis, Minn., and a yard at Lantry, S. D., brought this action to recover from defendant surety for the reasonable and agreed value of certain lumber and building material by it sold and delivered to the original contractor between August 18, 1921, and October 14, 1921, furnished for use in the construction of the bridge and the temporary buildings connected therewith, in the aggregate amount of $3,850.97, and also for certain hardware and materials furnished by one Haagen, a hardware merchant of Dupree, S. D., to said original contractor for said use between September 3, 1921, and October 11, 1921, in the aggregate of $384.11; the complaint alleging an assignment of the Haagen account to plaintiff prior to the institution of the action.

Defendant surety company answered by making certain admissions and interposing a general denial as to all other matters in the complaint. The issues so joined were tried to the court, and findings, conclusions, and judgment were in favor of the plaintiff upon both causes of action set out in the complaint, for the full amount asked, with interest. From this judgment, and from the order denying its motion for new trial, defendant now appeals.

Appellant presents 55 assignments of error, but they group themselves, and are grouped and pressed by appellant in argument, in support of the following propositions, as the substantial contentions advanced by appellant on this appeal.

First, that the trial court erred in admitting in evidence a copy of the original contract and contract bond.

Second, that the evidence is insufficient to establish sale of the materials here involved to the original contractor, delivery thereof to the contractor, and the reasonable or agreed value thereof.

Third, that respondent has failed to establish sufficient ownership of the Haagen account to authorize its suit thereon.

Fourth, that respondent, having failed to trace the materials actually into the structure of the bridge, cannot recover for the same.

[1, 2] As to appellant's first contention, the answer admitted the execution of the contract between the state and the original contractor, and the execution of the contract bond by appellant in the following words:

"Admits that the South Dakota state highway commission, acting for the state of South Dakota, entered into a contract with the Northwestern Bridge & Iron Company for the purpose of constructing a bridge across the Cheyenne river, and admits that the National Surety Company entered into a certain bond with the state of South Dakota as set forth in Exhibit A attached to the plaintiff's complaint."

At the trial respondent offered in evidence a copy of the contract and of the contract bond, certified by the secretary of the state highway commission, and appellant objected thereto as immaterial and incompetent, and that no proper foundation had been laid therefor. No serious contention is made that the bond was immaterial, and, of course, the contract, being referred to in the bond, was likewise material; but appellant now contends that the exhibit as offered was improperly received because the signatures were not identified. One answer to this contention is that prior to the trial appellant entered into the following written stipulation:

"It is hereby stipulated by and between the plaintiff and the defendant in the above-entitled action, that copies of the plans, specifiications, contract, proposals, bond, and other papers in connection with the erection of the bridge across the Cheyenne river by the Northwestern Bridge & Iron Company for the state highway commission of the State of South Dakota, being the bridge involved in this litigation, may be introduced in evidence by the plaintiff herein, when properly certified as true and correct copies of the originals thereof by the secretary of the state highway commission of the state of South Dakota, with like force and effect as though the originals thereof were introduced, subject, however, to all the objections to their introduction which might be made to the originals."

This stipulation certainly precluded the defendant from making any objection to a copy certified as set out in the stipulation, upon any ground of lack of identification or authentication, and the stipulation can bear no other fair construction.

A second answer is that the orginal transcript of the testimony in this case discloses that, when Exhibit A was offered in evidence, the only objection made was as follows:

"As to the copies being used we make no objection. We do interpose an objection to the introduction of the exhibits as to the specifications and as to the contract that they are immaterial within the issues of this case."

Thereupon said objection was overruled, with an exception allowed, and the exhibit received. Some little time later respondent offered Exhibits B to V, inclusive, in evidence, whereupon counsel for appellant stated, "We would like to reserve our objections until afterwards," which leave was granted by the court, and no objections whatever were then made to any of the Exhibits B to V. Still later, and just before respondent rested, appellant's counsel, pursuant to said leave reserved with reference to objecting to Exhibits B to V, and to the exhibits subsequently offered, made a very lengthy objection, starting as follows:

"Let the secord show that at this time by reservation and by permission of the court the defendant offers the following objections to the introduction in evidence of the following exhibits," etc.

In this lengthy objection they included an objection as to Exhibit A on the ground that the same was incompetent, and that no proper foundation had been laid therefor, and that it was not the best evidence, etc. The record affirmatively shows that, when Exhibit A was offered and received, counsel for appellant made at the time such objection as they deemed the occasion required, and as to that exhibit entirely failed to ask, reserve, or receive any leave thereafter to make as to Exhibit A any "ex post facto" or "nunc pro tunc" objection, and therefore the same will not now be considered.

[3]   A third answer to appellant's contention on this point is that, the instruments in question being part of the files and records of the highway commission, copies thereof, certified by the secretary of said commission under its seal, are admissible in evidence in any courts of this state, under the express provisions of section 3, c. 333, Laws 1919.

As to appellant's second contention, we have made a careful examination of the evidence. The trial court found that all of

the materials claimed to have been sold and delivered as set out in the complaint, and as set out in detail as to items and values in the bill of particulars furnished by respondent at appellant's request, were in fact purchased by and delivered to the original contractor or its agents within the days specified in the complaint, either at the bridge site or at the towns of Dupree or Lantry, and that the values placed thereon by respondent in its complaint and bill of particulars were in each instance the agreed value of such material, or the reasonable value thereof at the time and place, or both, and we are satisfied that the evidence is ample to support the findings on these points. This supporting evidence lies in written exhibits properly identified and received, in the testimony of Haagen, in the testimony of plaintiff's officers and its agent at Lantry, and in the testimony of one Simandl, who was engineer in charge of the work for the original contractor, and no good purpose would be served in setting it out in detail.

[4] As to plaintiff's third contention, there was offered in evidence a written statement of the account between Haagen and the original contractor, embracing the following form of assignment on the back thereof, signed by Haagen's authority, to-wit:

"Within and foregoing account hereby assigned to Anderson Lumber Company for valuable consideration for purpose of instituting and maintaining suit and procuring judgment thereon.

"Dated February 10, 1922."

Haagen testified that he authorized his attorneys to sign his name to the above assignment, and further said:

"I happened to do that because I thought maybe that would be the best way to handle it. I knew they had something to sue. I hadn't got any money for this assignment. The Anderson Lumber Company have never paid me anything yet, or given me anything in connection with this account. I am not expecting anything from them, except in the event a lawsuit is won. I will get the full amount if they recover the money."

The vice president of the respondent testified that respondent has never paid any of the money claimed to be due on the Haagen account, and further testified on cross-examination:

"Q. Did you buy that Haagen account? A. No, sir.

"Q. You don't own it, then? A. No. Sir."

On this state of the record, appellant contends that respond-

ent has noi right to maintain its first cause of action; that is, the cause of action on the Haagen account, which is alleged in the complaint as having been "for valuable and sufficient consideration assigned and transferred to the plaintiff herein * * * and the said J. F. Anderson Lumber Company is now the owner and holder of said account, and there is now due thereon to the said J. F. Anderson Lumber Company on said account as hereinbefore set out the sum of $384.11;" appellant contending that as to such account plaintiff is not the real party in interest. The evidence as developed on the trial clearly showed a sufficient assignment of legal title for the purposes of collection, and under the provisions of sections 2306 and 2308, Code 1919, plaintiff is authorized to maintain the action on the assigned account. Citizens' Bank v. Corkings, 9 S. D. 614, 70 N. W. 1059, 62 Am. St. Rep. 891; Dewey v. Komar, 21 S. D. 117, 110 N. W. 90.

[5] Further, it is the settled law that the defense that plaintiff is not the real party in interest, and hence has no right to sue, must be taken by demurrer if it appears upon the face of the complaint, and otherwise must be specifically pleaded in bar. J. I. Case T. M. Co. v. Pederson, 6 S. D. 140, 60 N. W. 747.

[6] We turn, now, to the fourth contention made by appellant, which may be stated in the words of appellant's brief as follows:

"It is appellant's contention that the plaintiff, to hold this surety liable under its bond, must establish at the trial that the materials * * * became a permanent part of the structure of the bridge, or that they were consumed in constructing the bridge."

It becomes important here to determine just what was the agreement of appellant surety company. It will be observed from the bond itself, as previously quoted, that one of its express conditions is that the principal "shall and do well and truly pay or cause to paid the wages stipulated and agreed to be paid to each and every laborer employed by the said principal, or his agent, and all claims for materials furnished," and appellant claims that the portion of the bond last above quoted is the maximum measure of its liability to pay for materials. It should be further observed, however, that another express condition of the bond is that:

"The said principal shall well, truly, and faithfully comply with and perform all the terms, covenants, and conditions of said contract, on his part to be kept and performed, according to the terms and tenor of said contract."

We have no hesitation in holding that by this broad provision last above quoted the bond carried into itself every term and condition of the contract between the principal contractor and the state of South Dakota, and the surety thereby bound itself for the performance of every act which the principal undertook in his contract. Evans & Howard Fire Brick Co. v. National Surety Co., 42 S. D. 109, 173 N. W. 448. Manifestly the obligation of this bond must be construed to be according to the terms and conditions of the principal's contract. One of the obligations of such contract in the instant case is:

"The said contractor further agrees to pay all just claims for materials, supplies, tools, appliances and labor, and all other just claims incurred by him or any of his subcontractors in carrying out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims."

Certainly appellant guaranteed the performance of that provision of the contract equally with the performance of every other.

Appellant urges the rule laid down by this court in Pittsburg Plate Glass Co. v. Leary, 25 S. D. 256, 126 N. W. 271, 31 L. R. A. (N. S.) 746, Ann. Cas. 1912B, 928, to the general effect that, in order to have a mechanic's lien under the provisions of sections 696 and 697, Rev. Code of Civil Procedure 1903, it was incumbent upon the subcontractor to establish that the labor or material furnished by him actually went into the construction of the improvement. The statute there involved purported to give a lien to any person "* * * who shall do any labor upon, or furnish any materials, machinery or fixtures for any building," etc. Neither the language of the Pittsburg Plate Glass nor the theory of law therein set out has any application whatsoever to the case at bar.

The instant case is not based upon or connected with any statute whatsoever. In this case by virtue of the agreement voluntarily assumed by appellant surety, as soon as any just claim is incurred by the contractor for "materials, supplies, tools, appliances, labor," or "any other just claim" "in

carrying out the provisions of the contract," the surety becomes liable for payment thereof, if not paid by the contractor. The appellant surety voluntarily undertook an obligation so broad in its terms that it would be difficult to define the extremities of its scope as applied to various possibilities. No case has been cited to us by counsel for either party to this appeal, where the obligation of the surety is shown to be as broad. In a number of cases cited the liability of the surety is to pay all sums "incurred for labor and material in prosecution of the work," or "for labor and materials furnished and supplied or performed in and about said work," or "full payment to all persons supplying him labor or materials in the prosecution of the work provided for in said contract," or "to pay for all materials used in the construction or repair of the work," or "to pay for all materials furnished." The obligation of appellant surety in this case goes far beyond that in any of the cases cited. It includes, not only "labor" and "material," but "supplies, tools, appliances, * * * and all other just claims incurred by him or any of his subcontractors in carrying out the provisions of the contract."

Some of the merchandise for which claim is made in this case was used for the construction of temporary structures at the bridge site, including shed for storing cement, bunkhouse, and dining room for the workmen and equipment for the same. Respondent's claim included fuel and oil for the contractor's machinery, both the machinery in use at the bridge site and the machinery in use in unloading steel at Lantry, the railroad point. It included lumber for forms for cement work, for a temporary wooden bridge, and for coffer dams. It included piping and pumps to supply water for the kitchen and for the bridge crew, and some small articles of equipment for the crew's quarters, such as washpans, mirrors, and brooms. It also included some items of tools and appliances, such as carpenter's pencils, rules, axes, etc., and included a spring for the repairing of the automobile for the engineer in charge, which automobile was in use to transport the engineer between the bridge site and the railway point, and also to carry men and equipment to the bridge site. In the light of all the facts as they appear in this case we are of the opinion that the indebtedness incurred by the contractor for each of these various items was a "just claim incurred in carrying out the pro-

visions of the contract," and appellant surety is liable therefor. If any of said articles have not been completely used up, either by the original contractor or by appellant itself after it took over the performance of the contract, in carrying out the provisions of the particular contract, then the appellant surety, upon making payment for the same, will, of course, be entitled upon principles of subrogation to the residual value thereof, if any. See Fry v. Bannon Sewer Pipe Co., 179 Ind. 309, 101 N. E. 10.

Finding no reversible error in the record, the judgment and order appealed from are affirmed.