NEWPORT TRUST COMPANY
*vs.*
PAUL E. SUSI, FRANK T. SUSI AND GUY SUSI,
D/B/A P. E. SUSI & CO.,
HARTFORD ACCIDENT & INDEMNITY COMPANY
AND
FRANK S. CARPENTER,
TREASURER OF THE STATE OF MAINE

Penobscot.    Opinion, August 30, 1957.

*Judson A. Jude,* for plaintiff.

*Richard J. Dubord,* for defendant Susi.
*Joseph B. Campbell,*
 for defendant Hartford Accident & Indemnity Co.
*James E. Frost, Dep. Atty. Gen.,* for State.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, JJ. DUBORD, J., did not sit.

TAPLEY, J. On report. The proceedings are instituted by a petition for declaratory judgment, the plaintiff seeking a determination of the nature and extent of liability, if any, of the defendant, Hartford Accident and Indemnity Company, as surety under a certain contract bond in favor of the Treasurer of the State of Maine. The condition of the bond which is the subject for determination is in the following language:

"The condition of this obligation is such that if the Principal designated as Contractor in the foregoing contract, shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same and shall pay all bills for labor, material, equipment and for all other things contracted for or used by him in connection with the work contemplated by said contract, and shall fully reimburse the obligee for all outlay and expense which the obligee may incur in making good any default of said Principal, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The parties to the action stipulated certain facts, the material portions of which are substantially these:

P. E. Susi & Co. by contract dated November 5, 1952 agreed with the State of Maine, through its State Highway Commission, to supply all equipment, appliances, tools, labor and materials and to perform all the work required for the construction of a section of bituminous concrete road in Troy, Maine. The contractor, P. E. Susi & Co., furnished a bond in favor of the Treasurer of the State of Maine with itself as principal and Hartford Accident & Indemnity Co. as surety. The contractor entered upon the performance of its contract and obligated itself to pay for labor and materials contracted for in connection with the work. The payrolls for labor were met by checks drawn on the First National Bank of Pittsfield in which bank P. E. Susi & Co. maintained its only bank account. The contractor on May 1, 1953 borrowed from the Newport Trust Company the sum of $3000.00 and as evidence of the indebtedness gave the bank its promissory note. This note, incidentally, was renewed on June 1, 1953. The understanding between P. E. Susi & Co. and the Newport Trust Company was that the money borrowed would be used by P. E. Susi & Co. to meet its payroll. This loan was not within contemplation by the bank nor by the parties to the bond at the time of

the execution of the bond. The Hartford Accident & Indemnity Company was without knowledge of the loan, never consented to it and never gave the bank any assurance that it was protected by the bond. The renewal note remains unpaid and P. E. Susi & Co. is indebted to the Newport Trust Company for the principal sum of $3000.00, with interest. Payment of this note has been demanded of the Hartford Accident & Indemnity Co. and payment has been refused. There have been no assignments to the Newport Trust Company from the laborers employed by P. E. Susi & Co. who have been paid from the proceeds of the money borrowed.

The issue involved, reduced to its simplest terms, is whether, according to the conditions of the bond furnished by the contractor in connection with the construction of the road for the State Highway Commission, the bonding Company is liable to the Newport Trust Company for the repayment of money borrowed from it by the contractor and used to pay workmen for labor performed on the job.

According to the stipulation, it was understood and agreed between the contractor and the Newport Trust Company that the proceeds of the loan would be used by the contractor to meet its payroll and that the money should not be used for any other purpose. The evidence shows that a substantial amount of the $3000.00 was used for construction payroll purposes.

In considering the question of liability on the part of the Hartford Accident & Indemnity Company to pay the money borrowed by the contractor, it is necessary to consider not only the conditions of the obligation of the bond but also they must be construed in light of the statutory requirements and the contract which occasioned the necessity of the bond.

43 Am. Jur., Sec. 149, Page 892:

> "The bond given by a contractor for public work should be construed in connection with, and in the light of, the contract in connection with which it was executed or the performance of which it secures. The bond and contract are to be treated as one instrument."

See 118 A. L. R., Page 62.

The bond was given under authority of R. S. 1954, Chap. 23, Sec. 40, the pertinent portion of which reads as follows:

> "The commission shall have full power in all matters relating to the furnishing of bonds by the successful bidders for the completion of their work and fulfilling of their contracts, and for the protection of the state and town from all liability arising from damage or injury to persons or property."

The notice to contractors, being the invitation for bids, issued by the State Highway Commission and by reference made a part of the contract contains this provision respecting the bond:

> "A contract bond will be required for the faithful performance of the contract in such sum as shall be fixed by the Commission; said sum shall be not less than fifty (50) per cent nor more than seventy-five (75) per cent of the amount of the contract. The surety and form of bond must be satisfactory to the Commission."

That portion of the written offer of P. E. Susi & Co. concerning the bond which by reference is part of the contract says:

> "Within ten (10) days from the date of the notice of acceptance of this Proposal, to execute the Contract, and to furnish to the State Highway Commission a satisfactory Contract Bond in the sum specified by Article 4 of Section 3 of the General Requirements and provisions of said Specifica-

tions, guaranteeing the faithful performance of the work and payment of bills."

The general requirements and provisions of the Standard Specifications of the State Highway Commission which are by reference made a part of the contract provide certain conditions relative to the bond and the obligations of the parties thereunder.

We will not attempt to quote verbatim these requirements as set out in the record but only to the extent that they are pertinent to the problem at hand.

**"Surety"** The corporate body, individual, or body of individuals bound with and for the contractor who engages to be responsible for the payment of all debts pertaining to, and for his acceptable performance of the work for which he has contracted.

**"Contract"** The agreement covering the performance of the work and the furnishing of materials for the proposed construction also shall include the proposal, plans, specifications, and contract bond also any supplement agreements which reasonably could be required to complete the construction.

**"Contract Bond"** This is the approved form of security furnished by the contractor and his Surety as a guarantee of good faith on the part of the contractor to execute the work in accordance with the terms of the contract.

**"Requirements of Contract Bond"** The successful Bidder must furnish a bond payable to the Treasurer of the State of Maine. The form of bond shall be provided by the Commission and the sureties shall be acceptable to the Commission. The bond shall guarantee the execution and faithful performance and completion of the work to be done under the contract, the payment in full of all bills and accounts for material and labor used in the work, and all other things contracted for or used in connection with the contract.

"**Responsibility for Damage Claims**" The contractor shall pay all bills for labor, materials, machinery, board of workmen, water, tools, equipment, teams, trucks, automobiles, freight, fuel, light and power and for all other things contracted for or used by him on account of the work contemplated.

We are not unmindful of the rule of liberal interpretation applicable to the type of bond concerned in this case. This rule of construction was reiterated in the case of *Carpenter, Treasurer of State* v. *Susi, et al.,* 152 Me. 1.

The Newport Trust Company takes the position that it is entitled to recover payment from the surety on the bond the amount of a defaulted note, the proceeds of which were used in a substantial amount to satisfy payment of labor employed by the contractor.

The plaintiff in its petition for declaratory judgment has narrowed the issue by alleging:

> "A disagreement has arisen as to the nature of the liability, if any, of the Hartford Accident and Indemnity Company under its bond insofar as it concerns payment of said note, which said disagreement raises a question of law, to wit: the nature and extent of liability of Hartford Accident and Indemnity Company as surety for payment of sums loaned to the contractor for the purpose of meeting current payrolls of the project covered by the bond when said sums were loaned and used for such specific purpose."

We are by this allegation directed to the circumstances of the contractor borrowing money for the specific purpose of paying current payrolls for labor.

One of the main requirements of a contractor's bond dealing with the construction of highways is to guarantee the payment of bills for labor, material and equipment as well as a faithful performance of the contract. 43 Am. Jur., page 885, Sec. 144:

"* * * * Ordinarily, such bonds must be conditioned not only for faithful performance of the contract of indemnification of the obligee municipality or public body, but also for the payment of the claims of laborers and materialmen performing services and supplying materials in the prosecution of the work."

Counsel for the plaintiff has laid stress on other phraseology not contained in the bond but proper of consideration, such as under "Proposal," "* * * * * * * guaranteeing the faithful performance of the work and payment of bills," under "Surety," "The corporate body, individual, or body of individuals bound with and for the Contractor, * * * * engages to be responsible for his payment of all debts pertaining to, and for his acceptable performance of the work for which he has contracted," under "Requirements of Contract Bond," "* * * * * This bond shall guarantee due execution and faithful performance and completion of the work to be done under the contract, and the payment in full of all bills and accounts for material and labor used in the work, and for all other things contracted for or used in connection with the contract; * * *."

There is no evidence of claims for wages by those performing labor. There was no knowledge on the part of the laborer that wages paid to him came from the borrowed money.

This court had occasion in the *Carpenter* case *supra* to concern itself with a contractor's bond of the same type as the one now being considered. In speaking of the functions of such a bond in relation to a lien, the court, on page 11 of the *Carpenter* case, had this to say:

"Under the bond the supplier does not acquire a lien, but the protection afforded by the bond is not unlike that of a lien. The reasons underlying a mechanics' lien and a highway construction bond have much in common."

This statement is strongly indicative of the fact that one of the main purposes of the bond is the protection of the laborer in receipt of his pay and in the event of not being paid, the surety on the bond is unquestionably liable to him but, by the same token, when his pay requirements have been met and satisfied, he no longer has any claim against the bond. The parties to the bond contracted "* * * * shall pay all bills for labor * * * *." Counsel for the petitioner argues liability on the part of the bonding company because of such provisions in the bond and contract as "guaranteeing the faithful performance of the work and payment of bills," "engages to be responsible for his payment of all debts pertaining to and for his acceptable performance of the work for which he has contracted," "and for all other things contracted for or used in connection with the contract," "and for all other things contracted for or used by him on account of the work herein contemplated." The plaintiff has by its pleadings limited itself to a right of recovery based upon the loan for the particular purpose of payment of labor wages. We must confine ourselves to determination of liability under these particular circumstances. The bond and contract specifically provide a guarantee on the part of the surety for payment in full of all bills and accounts for labor and material. In as much as there is present a guarantee to satisfy labor wages, there is no requirement to justify liability on the part of the bonding company by placing wages in the category of "payment of all debts pertaining to * * * the work for which he has contracted * * *," or "and for all other things contracted for or used in connection with the contract." The provision for payment of labor is definite and not in any way qualified by the other provisions.

If the bank acquired assignments from the workmen upon payment to them of wages paid with money borrowed from the bank, then it would stand in the same relationship with the surety as did the workmen. 127 A. L. R. 994.

In the case of *First Nat.. Bank of Dothan* v. *American Surety Co. of N. Y.*, 53 F. (2nd) 746, at page 748:

"By lending money to contractor for use by him in paying for labor and material used in the work contracted for, the lender did not take part in performing the contract or in furnishing labor or material for use in the work."

See *New Amsterdam Casualty Co.* v. *State (Md.)*, 128 A. 641.

*Murchison Nat. Bank of Wilmington* v. *Clark, et al. (N. C.)*, 135 S. E. 123. In this case money was advanced by a bank for the purpose of paying the claims of laborers and material men. That portion of the bond involved contains conditions similar to the ones now under consideration, and reads in part as follows:

"********** if the principal *shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same* ****** and shall pay all persons who have contracts directly with the principal for labor and materials ********." (Emphasis ours)

On page 24 of the case the court says:

"It is the general holding that a bank furnishing money to a contractor doing public work, for use in paying the claims of laborers and material men without more, does not come within the protection of a statutory bond conditioned to pay all persons supplying the principal with labor or materials in the prosecution of the work."

See *U. S.* v. *Rundle*, 107 F. 227.

The plaintiff argues through counsel that it is entitled to recover money loaned under the circumstances of the case on the basis of equitable subrogation. There is no merit to this contention. The bank does not by the mere act of loaning money to the contractor for the purpose of paying

labor become subrogated to the rights of the laborer. *First Nat. Bank of Chisholm* v. *O'Neil, et al.,* 223 N. W. 298. See 127 A. L. R. 992, 993; *Carr Hardware Co.* v. *Chicago Bonding & Security Co.,* 181 N. W. 680.

The plaintiff loaned the contractor $3000.00 evidenced by a note in regular form. A substantial portion of the loan was used to pay wages of the contractor's workmen. The bonding company was unaware of the transaction at the time the money was loaned. The workmen had no knowledge that the money which they received was borrowed from the plaintiff and, of course, gave no assignments of any rights they may have had under the bond to the plaintiff. The bond and the contract are silent as to any provisions covering the borrowing of money by the contractor for use in the prosecution of the work. The loan was not contemplated by the parties to the bond or by the bank at the time of the execution of the bond. The money was borrowed and loaned for the specific purpose of satisfying the labor payroll. Consideration is given to the contention of the plaintiff that liability against the bonding company attaches because of other conditions in the bond and contract exclusive of the one applicable to the payment of labor wages but we are of the opinion, after a careful perusal of the record, that other conditions than the payment of bills for labor become immaterial and not pertinent in view of the facts of the case.

It is determined and declared that no liability exists on the part of the Hartford Accident & Indemnity Company as surety for money loaned to the contractor for the purpose of paying labor payrolls of the project covered by the bond.

*Case remanded to Superior Court for entry of decree in accordance with this opinion.*