STATE For Use of FARMERS STATE BANK OF PARKSTON, Plaintiff v. KUIPERS CONST. CO., Defendant HARTFORD ACCIDENT & INDEMNITY CO., Defendant & Appellant and UNITED STATES, Intervenor and Respondent

(190 N.W.2d 769)

(File No. 10756.  Opinion filed October 13, 1971)

**Woods, Fuller, Shultz & Smith,** and **F. M. Smith,** Sioux Falls, for defendant and appellant.

**William F. Clayton,** U. S. Atty., **David R. Gienapp,** Asst. U. S. Atty., Sioux Falls, for intervenor and respondent.

WOLLMAN, Judge  (on reassignment).

The question raised in this appeal is whether one who lends money to a contractor who uses the funds to complete a public improvement contract is entitled to recover on the contractor's performance bond required under the provisions of SDCL 5-21.

In May of 1962 Kuipers Construction Company (Kuipers) opened a checking account in the Farmers State Bank of Parkston, South Dakota (Bank) and established a line of credit with the bank. Thereafter the bank made a number of loans to Kuipers, the proceeds of which were used in connection with Kuipers' construction activities. There was no requirement by the bank that Kuipers use the proceeds of the loans for certain purposes or on certain projects and the bank exercised no supervision over the use of the loan proceeds by Kuipers.

On October 22, 1962, Kuipers entered into a construction contract with the State of South Dakota through the State Board of Regents for the construction of a science building at the institution then known as South Dakota State College located in Brookings, South Dakota.

On October 26, 1962 Kuipers, as principal, and Hartford Accident and Indemnity Company (Hartford) as surety, executed a performance and payment bond to the State of South Dakota, as obligee, in the amount of the contract.

Kuipers started working on the science building soon after the contract and bond were executed. On or about July 23, 1964, the Small Business Administration (SBA), an agency of the United States government, made a participation loan to Kuipers in the amount of $75,000, SBA participating therein to the extent of 75% ($56,250), and the bank participating to the extent of 25% ($18,750).

The evidence reveals that the original loan application submitted to SBA by the bank and Kuipers in the fall of 1963 was held in abeyance pending receipt by Kuipers of evidence that it could secure bonds for future jobs. Hartford furnished Kuipers a letter in July of 1964 to the effect that Hartford would consider for a period of one year applications by Kuipers for bid, per-

formance and payment bonds on individual contracts in specific amounts to be approved in advance, subject to certain asset requirements and bank account control.[1]

The SBA loan was secured by all of the assets of Kuipers available for the purpose of collateral. The proceeds of the SBA loan were not designated for use on the science building project and there was no requirement by SBA that the money be used on that project. Neither the bank nor SBA exercised any supervision over Kuipers' use of the proceeds of the SBA loan.[2] The proceeds were deposited by Kuipers in its checking account in the bank and were mingled with funds then deposited in the account and thereafter deposited therein from other sources.

Kuipers had a balance in the checking account of $5,918.98 on July 23, 1964. On July 24, 1964 the $75,000 SBA loan was deposited in the account together with an additional deposit of $11,907.94 from other sources making a total balance in the account as of the close of business on July 24, 1964 of $92,826.92.

After July 24, 1964 Kuipers issued checks drawn on the bank account in the total sum of $48,357.36 in payment of expenses and bills incurred in the performance of its contract for the construction of the science building.

Kuipers defaulted on the contract and Hartford completed construction of the science building, making payment of all expenses of labor and material incurred in connection therewith as required under the terms of the performance bond.

---

1. SBA contends that Hartford and Kuipers were in league with each other in submitting evidence to SBA that Hartford would bond Kuipers in the future and that this was an inducement to SBA to make the loan to Kuipers. Suit was not brought by SBA on any theory of estoppel against Hartford, however, and the trial court did not impose liability on the basis of estoppel.

2. The Chief of the Financial Assistance Division in the SBA's Sioux Falls, South Dakota Office testified on direct examination as follows: "Q. What type of a loan was this in SBA terminology? A. It was a working capital loan. * * * In other words, it could be used for paying up payables, increasing inventory, paying payrolls or any other current expenses. * * *" On cross-examination the witness testified: "Q. Now at no time, as I understand it, did the SBA ever make any requirement that the proceeds of this loan or any portion of them be applied for any specific purpose other than the $3500.00 debt retirement on the mortgage you have mentioned and the balance in the general category of working capital? A. That's right. * * * Q. So never at any time from the time this application was first presented to the SBA and on through until the loan funds had been dispersed did the SBA by any act whatsoever earmark any of these funds for use on the science building, did it? A. That is correct. Q. Or require that they be used there? A. That is right."

The bank brought suit against Kuipers for recovery on two promissory notes in the total amount of $51,807.82 and against Hartford for recovery of that sum under the terms of the performance bond. The United States of America was permitted to intervene in the action and its complaint sought recovery from Kuipers and Hartford in the sum of $56,278.56, which was alleged to be the balance due on the SBA loan.

The trial court held that the SBA loan proceeds expended for labor performed and materials furnished under the contract on the science building project were payable under the performance bond. The court found that from the total of $48,357.36 traceable from Kuipers' account in the bank to the science building project there should be deducted the sum of $17,826.92 representing funds on deposit in the account from sources other than the SBA loan. The court awarded judgment in favor of SBA against Hartford for the balance of $30,530.44. The court denied the claims of the bank on the ground that they involved loans whose proceeds were part of an indistinguishable line of credit that had been given to Kuipers over the years and could not be traced to the science building project. No findings or conclusions were made concerning the liability of Kuipers to the bank and SBA and no judgment was entered against Kuipers.

The contract between Kuipers and the State stated that: "The Contractor shall perform everything required to be performed and shall provide and furnish all of the plant, labor, materials, necessary tools, expendable equipment, and all utility and transportation services required to perform and complete in a workmanlike manner and ready for operation all the work required for the General Construction of a Science Building  *  *  *

"The Contractor shall submit evidence satisfactory to the State Engineer that all claims of unpaid payrolls, material bills and other indebtedness connected with the work have been satisfied, prior to approval of the final payment."

The performance and payment bond executed by Kuipers and Hartford provided in part:

" * * * which contract is herein referred to and made a part hereof as fully and to the same extent as if the same were entirely written herein * * *

"NOW THEREFORE, If the above principal shall in all respects comply with the terms and conditions of said contract, and his (their or its) obligations thereunder, including the specifications therein referred to and made a part thereof, and such alteration as may be made in such specifications, as herein or therein provided for, then this obligation to be void, or otherwise to be and remain in full force, effect and virtue.

"AND the further condition of this Bond is that in the event said Principal shall fail to pay all just claims and demands on the part of any employee, persons, firms or corporations for labor and materials furnished for or used in connection with the prosecution of the work under said contract, or pay all taxes which may accrue to the State of South Dakota under the provisions of the 'Use Tax Act of 1939', and Chapter 479 of the South Dakota 1957 Session Laws, then this Bond and the Sureties thereon shall be responsible to such persons, firms or corporations, and the State of South Dakota for the full payment of the full value of such labor and materials so furnished, including the payment of South Dakota Use Tax."

The bond was executed in compliance with the provisions of SDCL 5-21-1, which provides that:

"Whenever any contract is entered into for the construction of public improvement or the furnishing of any material or labor therefor, the contractor shall be required, before commencing such work, to furnish surety in an amount not less than the contract price, for the faithful performance of such contract, with the additional obliga-

tion that such contractor shall promptly pay all persons supplying him with labor or material in the prosecution of the work provided for in such contract."

SDCL 5-21-5 permits any person who has not been paid for labor or material furnished or used in the construction of any public improvement to intervene and be made a party to any action instituted by the public corporation on the surety. SDCL 5-21-6 provides that if no suit is brought by the public corporation within six months from the completion and final settlement of a public improvement contract, a person who has supplied the contractor with labor or material used in the prosecution of the work shall be authorized to bring suit in the name of the public corporation for his use and benefit against the contractor and the surety, with the condition that:

" * * * where suit is instituted by any such person on the surety of the contractor, it shall not be commenced until six months after the complete performance of such contract and final settlement thereof but must be commenced within one year thereafter; provided, further, that where suit is so instituted by any such person, only one action shall be brought, and any person may file his claim in such action and be made a party thereto within one year from the completion of the work under such contract, and not later * * * ".

Hartford contends that SBA's claim must fail because SBA could not qualify as a statutory beneficiary under the performance bond and because the claim for money loaned to Kuipers was not a just claim under the bond.

This court held in State of South Dakota for Use of Farmers State Bank v. Ed Cox & Son, 81 S.D. 165, 132 N.W.2d 282, that money loaned to a contractor for the specific purpose of paying claims incurred in carrying out the provisions of a contract with the State Highway Department was within the coverage of the contractor's performance bond. The statute involved in the Cox case, SDCL 31-23-1, required the contractor to furnish a performance bond in the form and condition as required by the

statutes of the State of South Dakota. As the court stated, however, there is no statute which prescribes the form or conditions of highway contract performance bonds. The court noted that Ch. 300, Laws of 1939, which amended SDCL 5-21 (then SDC 65.07) specifically exempted contracts of the State Highway Commission from its coverage. The court was thus faced with the situation where:

"The legislature's failure to implement the Act in this regard leaves it incomplete concerning the specific conditions that the bond must contain. * * * In the sense that it is required by statute it is a statutory bond, but its specific coverage is not spelled out by statute but rather by the contract. Consequently, we do not feel that the liability on a bond furnished pursuant to this statute is limited to laborers and materialmen. In our view its coverage is determined from the instrument." 132 N.W.2d 282, 286.

The court then construed the language of the bond together with the language of the contract and concluded that the claim for money loaned to the contractor was within the coverage of the bond.

SDCL 5-21-1 imposes the obligation in a surety bond that the contractor shall promptly pay all persons supplying him labor or material in the prosecution of the work. Throughout SDCL 5-21 there are repeated references to labor and material; there is no mention whatsoever of debts, demands or claims. Thus the statute is specific in delineating the class of persons the surety bond is designed to protect.

This court said in State ex rel. Evans Equipment Company v. Johnson Construction Company, 83 S.D. 444, 160 N.W.2d 637, 639:

"A contractor's bond should be construed in connection with the contract with which it was executed and the statute requiring it. However, a bond may be conditioned more broadly than the minimum requirements of the

statute. If it is sufficiently definite and precise to impose a liability to pay the claims of third parties, the bond furnished to the state or a public agency is an enforceable obligation irrespective of the minimum requirements of the statute and affords a right of action to a person furnishing labor or materials. J. F. Anderson Lbr. Co. v. National Surety Co., 49 S.D. 235, 207 N.W. 53; Western Material Co. v. Enke, 56 S.D. 302, 228 N.W. 385; Thompson Yards, Inc. v. Van Nice, 59 S.D. 306, 239 N.W. 753; State ex rel. Farmers State Bank v. Ed Cox & Son, 81 S.D. 165, 132 N.W.2d 282."

■ ■ There is no definite and precise promise in Hartford's bond to pay those who loaned money to Kuipers. Indeed, the specific agreement in the bond to pay for labor and materials negates the idea that Hartford intended to obligate itself to pay any other type of claims. It is reasonable to assume that the State, Kuipers and Hartford signed the contract and bond with the intention of complying with the requirements of the statute. The provision in the contract relating to the payment of unpaid payrolls, material bills and other indebtedness connected with the work, when read in the light of SDCL 5-21-1, leads to the conclusion that the contract contemplated the payment of those persons whom the statute was designed to protect.

SBA contends that the remedies provided by SDCL 5-21 are not exclusive and that there is an extra-statutory liability on Hartford's bond that may be enforced by SBA under a third party beneficiary claim, citing Evans & Howard Fire Brick Co. v. National Surety Company, 42 S.D. 109, 173 N.W. 448; Thompson Yards, Inc. v. Van Nice, 59 S.D. 306, 239 N.W. 753; and State v. Johnson, supra.

None of these cases dealt with the precise question that is before us in the instant case inasmuch as they did not involve the statute in question. Where, as here, a performance bond has been given pursuant to the requirements of a statute, it "must, accordingly, be construed in connection therewith". Franzen v. Southern Surety Co., 35 Wyo. 15, 246 P. 30, 31. See also Audrain County ex rel. and to Use of First Nat. Bank of Mexico v. Walker,

236 Mo.App. 627, 155 S.W.2d 251; Newport Trust Co. v. Susi, 153 Me. 51, 134 A.2d 543 and State v. Johnson, supra. The class of persons specifically protected by SDCL 5-21-1 indicates the purpose the legislature was seeking to accomplish and serves as a standard against which the coverage of the bond should be determined. The fact that SBA could not possibly comply with the conditions precedent to commencing suit under SDCL 5-21-6 is an indication of the scope of coverage the statute contemplates.[3]

The contract in the Ed Cox & Son case provided that:

"The said Contractor further agrees to pay all just claims for materials, supplies, food, tools, appliances, and labor, and all other just claims incurred by him or any of his sub-contractors in carrying out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims."

The court stated that the agreement in the contract to pay "all other just claims incurred by him or any of his sub-contractors in carrying out the provisions of this contract" indicated an intention to include additional liability, limited only by the requirement that the claim be incurred in carrying out the provision of the contract. The agreement to pay all other just claims was interpreted, in the absence of statutory guidelines, as a promise to pay a class of persons in addition to laborers and materialmen. The court noted the significance of the fact that there was an obligation to use the borrowed money on the particular contract in question.

A similar situation was present in the case of Puget Sound State Bank v. Gallucci, 82 Wash. 445, 144 P. 698, relied upon by the court in the Ed Cox & Son case. There the contract contained an agreement to perform all of the provisions of the contract and

---

3. The conditions imposed under the Miller Act, 40 U.S.C.A. §§ 270a-270d the federal counterpart of SDCL 5-21, have been held to be conditions precedent to liability that must be established by the person seeking to recover. United States for Use of Soda v. Montgomery, 3 Cir., 253 F.2d 509; United States for Use and Benefit of Statham Instruments, Inc. v. Western Casualty & Surety Company, 6 Cir., 359 F.2d 521.

a promise to pay "all just debts, dues and demands incurred in the performance of said work." The Washington court concluded that this contract language was broad enough to provide coverage under the performance bond to a bank which had loaned money to the contractor for the purpose of paying debts incurred in the construction of the public improvement covered by the bond. The court conceded that the language of the bond and statute might not have been sufficient to create liability in the absence of the outright promise to pay contained in the contract.

Kuipers' contract, however, required the contractor to submit satisfactory evidence that " * * * all claims of unpaid payrolls, material bills and other indebtedness connected with the work have been satisfied * * * ". We believe the words "and other indebtedness connected with the work", not being separated from the preceding words, refer to claims related to laborers and materialmen and do not create a separate class of claimants not described in SDCL 5-21.

We believe that this provision in Kuipers' contract was intended to protect the State against lien claims on the money due Kuipers from the State that might be filed by workers and suppliers under the provisions of SDCL 5-22. There is no reason to believe that either the State or Kuipers intended that this provision of the contract was an agreement on the part of Kuipers to repay all money loaned by lending institutions in connection with the work as a condition precedent to final payment by the State. There is no reason why the State would have any concern about repayment of loans inasmuch as a lending institution could not possibly qualify as a lien claimant under the provisions of SDCL 5-22. In the case of First National Bank of Dothan v. American Surety Company, 5 Cir., 53 F.2d 746, the contract provided that:

" 'Before the issuance of final certificate the contractor shall submit evidence satisfactory to the Architect that all pay rolls, material bills, and other indebtedness connected with the work have been paid.' "

The court stated:

"The provision in question deals only with the subject of the contractor submitting to the architect evidence of the contractor's compliance with requirements of the contract. It does not purport to add anything to what the contract required to constitute full completion of the work contracted for. Evidently that provision was not intended so to enlarge the scope of the contractor's undertaking as to impose upon him the obligation to pay a debt or debts to third persons of a kind in no way mentioned or referred to in the part of the contract which specified what he was to do in erecting and completing the building contracted for. The contract contains no provision with reference to the contractor paying debts incurred for borrowed money. This being so, there seems to be no basis for an inference that the payment of such debts was intended to be provided for by the requirement, in a provision dealing exclusively with the furnishing by the contractor of evidence of his performance of the contract, that he furnish evidence of the payment of 'indebtedness connected with the work.' " 53 F.2d 748.

We can perceive no reason why we should extend the coverage of the bond to money lenders by judicial largess when there is nothing to indicate that the State, Kuipers or Hartford intended by the contract and bond that they should be so protected. "The borrowing of money to carry out the contract is not a matter which it can be assumed the parties had in contemplation in the execution of the instrument." People for Use of Western Acceptance Co. v. Southern Surety Co., 76 Colo. 141, 230 P. 397, 398. The contract, when construed with the statute, militates against an interpretation which would find an agreement to pay money lenders. A money lender can protect itself by taking security for its loans, as SBA did here, whereas laborers and materialmen are not able to do so in the ordinary course of events. If a secured money lender were permitted to file claims along with laborers and materialmen, a situation might arise where the coverage of the bond would be insufficient to pay all claims in full; the claimants would then have to take their pro rata shares under SDCL 5-21-7, with the money lender then having the benefit of his prior security to augment his recovery on his loan.

Our holding is in accord with the general rule that money lenders are not within the coverage of a performance bond. 17 Am. Jur.2d, Contractors' Bonds, § 72, p. 249; Franzen v. Southern Surety Co., surpra;  People, for Use of Western Acceptance Co. v. Southern Surety Co., supra;  State ex rel. Hagquist v. United States Fidelity & Guaranty Co., 125 Or. 13, 265 P. 775.

We conclude, then, that SBA's claim is not within the coverage of Kuipers' bond with Hartford.

Reversed.

BIEGELMEIER, P. J., and HANSON and WINANS, JJ., concur.